JOHN H. SNIDER and wife, plaintiffs in error, vs. WILLIAM NEWSOM, ex'or, defendant in error.

A man's will was to this effect: I give "all my estate" to my wife; "but in case" she marry again, I give it to my five children.  She married again. *Held*, That she lost the estate, and it went to the children.

In Equity, from Lee.   Decision on demurrer by Judge ALLEN, January adjourned Term, 1858.

On the 31st January, 1855, Cæsar A. Savage, of the county of Lee, duly made and executed his last will and testament and shortly thereafter departed this life. The following is a copy of said will, left in full force and unrevoked by deceased at his death:

GEORGIA, LEE COUNTY:

In the name of GOD, amen. I, Cæsar A. Savage, being weak in body but of sound mind, memory and understanding, and considering the certainty of death, and the uncertainty of the time thereof, and to this end, that I may be the better prepared to leave this world whenever it shall please GOD to call me home, do therefore make and declare this my last will and testament, hereby revoking and making void all former wills by me at any time heretofore made.

Item 1st. I hereby constitute and appoint my beloved wife, Francis M. T. Savage, and my friends, John T. Simms and William Newsom, and the survivor and survivors of them, executors and executrix of this my last will and testament. After the payment of my just debts and charges I dispose of my estate as follows:

Item 2d. I give, devise and bequeath all my estate, both real and personal, save what shall be necessary for the payment of my just debts and charges, to my beloved wife, Frances M. T. Savage, (subject to the conditions herein named,) with the power to sell, convey, give or dispose of, by deed, will, or any way she deems proper. But in case my said wife, Frances M. T. Savage, shall marry again after my decease, then, and in such case, I revoke the foregoing bequest to her and direct that the same shall from thenceforth cease and determine, and the whole of my estate, both real and personal, hereinbefore given to her, I give, devise and bequeath to my five children, Darnette Savage, Charles Savage, Henry Savage, John Carter Savage and Eliza Johnson Savage, to be divided equally between them, share and share alike; my wife to account for the whole of my estate, that may, up to

that time, have gone into her hands, except such as she may have expended for the support, maintenance and education of herself and the said children, my intention being to exclude her entirely from any participation whatever in my estate, in case she should ever marry again after my death. And in case she does not, then that she have the whole, to give to my children, at such time and in such quantities, or none at all, as she pleases; my        being in this particular to make my children dependant for any part or share of my estate solely upon their mother and my said wife, in case she remains a widow.

Item 3d. I prefer that all my estate shall be kept together, as I leave it, without any sale, if it is possible, my executor paying my debts and all expenses out of the income arising from my estate, but this I leave entirely to the discretion and judgment of my wife, Frances M. T Savage. I not caring to clog my intention in her favor with other conditions and restrictions than that she remain single.

In witness whereof I, Cæsar A. Savage, have to this my last will and testament, set my hand and seal this, the thirty-first day of January, eighteen hundred and fifty-five (1855.)

CÆSAR A. SAVAGE. [SEAL]

This will was admitted to probate in the Court of Ordinary, and the widow of deceased and William Newsom duly qualified as executors.

Sometime afterwards, the widow, the said Frances M. T. Savage, intermarried with John H. Snider, and immediately thereupon Newsom took possession of the estate of his testator and assumed the sole and exclusive control and management thereof.

Snider and wife filed their bill, claiming and setting up an absolute title to the whole estate, and alleging that the condition contained in said will being in restraint of marriage was illegal and void.

Defendant, Newsom, demurred to the bill.

The Court, upon argument, sustained the demurrer and dismissed the bill, and complainants excepted.

H. MORGAN, for plaintiffs in error.

LYON, IRWIN & BUTLER, *contra.*

*By the Court.*—BENNING, J. delivering the opinion.

There was a gift, over, "in case" the widow should "marry again." This gift, over, if in itself, good, put it beyond a doubt, that the widow by marrying lost her legacy.

"It is agreed on all hands that, (however restrictive of marriage," the condition,) "when the legacy is given over to other uses, the testator shall be deemed to regard those uses." *Lord Thurlow in Scott vs. Tyler,* 2 *Brown Ch. R.* 488.

"Yet, though strict words of condition be used in the creation of the estate, if on breach of the condition the estate be limited over to a third person, and does not immediately revert to the grantor or his representatives, (as if an estate be granted by A. to B., on condition that within two years B intermarry with C. and on failure thereof then to D. and his heirs,) this, the law construes to be a limitation, and not a condition." 2 *Black. Com.* 155.

*Lloyd vs. Branton,* 3 *Meriv.* 108; *Scott vs. Tyler,* 2 *Bro. C. C.* 343; *Pyle vs. Price,* 6 *Ves.* 780; *Lucas vs. Evans,* 3 *Atk.* 260; *Hervey vs. Aston, Willes* 83, are cases in which the gift was to one, and if he married without the consent of some third person, over. *Fitchett vs. Adams,* 2 *Str.* 1128 · *Sheffield vs. Lord Orracy,* 3 *Atk.* 282, were cases in which the gift was to a person, and if she, (a widow,) married again, in general terms, over. And in all these cases, the decision was, that the donee by marrying lost the gift, and it went over. There are other cases to the same effect. See *Cruise's Dig. Tit.* XIII, *Sec.* 53 *et seq., Stor. Eq. Jur. Sec.* 280, *et seq., Lewis on Peop. Sec.* 2158. Indeed, I did not understand the

counsel for the plaintiff to insist, that, if the gift over was in itself good, the widow did not lose her legacy by marrying again.   He insisted, that the gift over was void, and therefore, that it amounted to nothing.   In this was he right?   His first reason for the position was thus stated by him :   " Because it is a well established rule of law, that a bequest over to support a limitation, must be an express bequest of the particular legacy, and that a mere gift of the residue, will not sustain the limitation."

But here, the bequest over *is* an express bequest.   The words are; "the whole of my estate, both real and personal, hereinbefore given to her, I give, devise and bequeath to my five children."

His second reason was thus stated by him, " Because there is another well established rule of law, that when a testator gives a thing to a person to whom the law gives it, and in the same manner, it is as if it had not been given ; and such a bequest is void."

But here, the gift over is *not* to the persons to whom the law would give the thing; the gift over is to the children, and the law would give a part only of the thing, to the children ; it would give a part to the widow.

I must say, too, that I am not myself prepared to admit the general principle, here contended for.   I doubt whether such a principle is in force in this State, or, at this day, even in England.

His third and last reason was thus stated by him :   " Because the bequest over is an attempt to limit a fee on a fee, which cannot be done."

But a fee may be limited on a fee by an executory devise, if the limitation over is such, that it must take effect, if at all, within a life or lives in being, and twenty-one years afterwards.   *Bac. Abr. " Devise" (I.)* 2 *Black.* 173.

Besides, "A condition *in deed*, may be *annexed to every species of estate;* to an estate in fee, in tail, for life, or years,

in any lands or tenements." *Cruise's Dig. Tit.* XIII, *sec.* 9, *Fitchett vs. Adams*, 2 *Str.* 1128.

It is not true, then, that the gift over was void. The gift over, being in itself good, it must follow, then, that the widow, by marrying again, lost her legacy.

But even if the devise over was in itself void, it would still be true, we are strongly inclined to think, that the widow, by marrying again, lost her legacy.

There is not an English case, or dictum, I think, countenancing the doctrine, that the rule making conditions in restraint of marriage void, extends to the case in which, the person on whom the condition is imposed, is a widow. There is a broad and strong current of judicial and professional dicta, to the contrary. *Jordan vs. Holkham, Amb.* 209; *Scott vs. Tyler*, 2 *Bro. Ch. R.* 380; 1 *Jarm. Wills*, 837; *Cruise's Dig. Tit.* XIII, *sec.* 67; 1 *Stor. Eq. Jur. sec.* 285.

The estate, *during* widowhood, is as old as the common law. Such an estate is, precisely equivalent in import, to an estate to a widow for her life, *on condition* that she does not marry again. Is it possible that there can be one law for the former estate, and another law for the latter ?

Widows in a majority of cases, have children. A second marriage must, almost of necessity, interfere with their duties to these. In practice it, frequently, also endangers the peace and the property of the children.

A part of the Act of distributions of 1804, is in these words: " If the father or mother be alive, and a child dies intestate, and without issue, such father, or mother, in case the father be dead and not otherwise, shall come in on the same footing as a brother or sister would do. *Provided*, That such mother, after having intermarried, shall not be entitled to any part or proportion of the estate of a child who shall die intestate and without issue, but the estate of such child shall go to, and be vested in the next of kin on the side of the father." This indicates a policy in the Legislature, to discourage widows from marrying.

Snider and wife vs. Newsom, exo'r.

It is true, that there is a decision, in Massachusetts, which seems to sanction the position, that a condition in restraint of marriage, can no more be imposed on a widow, than it can, on a woman that has never been married. *Parsons and wife vs. Winslow, 6 Mass.* But the decision is, so far as this Court is concerned, but matter of judicial dictum, and as such, it is hardly potent enough, to turn back the broad and strong current of judicial and professional dicta, to which I have referred.

The doctrine that conditions in restraint of marriage are void, is one that came from the civil law, if it came at all, of which I have serious doubt.

By the civil law, even a condition that one should not marry without the consent of some third person, was held void; it being so easy a thing, to select, as this person, one who would never give the consent; yet, by the common law, such a condition is held valid. Is not this enough to show, a *general* repugnancy in the common law to the civil law.

Then, the common law has its estate during widowhood. The civil law, I suppose, would see no difference between such an estate, and an estate to a widow for her life, provided, she did not marry again, and, therefore, would hold such an estate an absolute estate during life.

And, the common law, it is admitted on all hands, I believe, never removed this doctrine at all, as to *realty.* If it be true, that it was ever received as to personalty, the time at which it was so received, must have been long ago, when personalty was nothing, and realty was every thing. Receiving it, as to personalty, and rejecting it, as to realty, at a time when this was so, would have gone but a very little way, towards accomplishing the object of the Roman law, the encouragement of marriage, and would, besides, have been a measure, in itself, of an extremely absurd self-inconsistency. Again, by the common law, a man was owner absolute, of his personalty; he might dispose of it as he pleased; but as to his realty, he was more or less fettered.

10   VOL. XXIV.

Now, these things being so, is it likely, that the common law would reject this doctrine as to realty, and yet receive it as to personalty ?

I say, then, that I doubt, whether this doctrine was ever, to any extent, received by the common law.   I admit, how-ever, that there is high authority, for its having been received by that law, to a very limited extent.   But certainly the far greater part has been rejected.   And is it not of necessity, that any  principle, to be one that would  reject this greater part, *would have* to be one that would reject the lesser part? It would rather seem to me, so.

We think, that the Court below was right, in holding that there was no equity in the bill.

Judgment affirmed.