## DOYAL et al. vs. SMITH et al.

The 9th item of testator's will is as follows: "At my death, I give and bequeath to my beloved wife, Elizabeth Boynton, during her lifetime or widowhood, the West half of my land, with a good horse and, farming tools for one horse; two cows and calves, and one year's provision for the family, and household and kitchen furniture, sufficient for the use of the family; one bed and bedstead, for the use of the four younger children; and one cart and oxen, for the use of the family; also, Solomon's labor is to go to raise the children. When the youngest becomes of age, he shall be the property of my wife, Elizabeth Boynton, and also ғ'loyd, a negro boy, and fifty dollars for the use of the family." The intended disposition as to Floyd being equivocal, and parol testimony being let in to show what was the intention. *Held*,

1. That the verdict of the jury must be on the parol testimony, and not upon their sense of the words of the will.

2. When the verdict is decidedly against the weight of 'evidence, a new trial will be granted.

In Equity, in Henry Superior Court. Tried before Judge CABANISS, at the April Term, 1860.

John A. Smith, executor of Elijah S. Boynton, deceased, filed his bill in equity in Henry Superior Court, invoking a construction of the ninth item of the will of the said Elijah S. Boynton, and asking direction as to the execution. The said ninth item of the will is in the following words, to wit:

"At my death, I give and bequeath to my beloved wife, Elizabeth Boynton, during her lifetime or widowhood, the west half of my lands, with a good horse and farming tools for one horse; two cows and calves, and one year's provision for the family; and household and kitchen furniture, sufficient for the use of the family; one bed and bedstead, and bed furniture, for the use of the four younger children; and one cart and oxen, for the use of the family; also, Solomon's labor is to go to raise the children. When the youngest becomes of age, he shall be the property of my wife, Elizabeth Boynton; and also Floyd, a negro boy; and fifty dollars, for the use of the family."

The controversy in this case is confined to that clause of the ninth item of the will, relative to the negro boy Floyd, in these words: "And also Floyd, a negro boy."

Elizabeth Boynton sets up in her answer to the bill: That

it was the intention of the testator in and by his said will to give and bequeath to her, absolutely, the negro boy Floyd, mentioned in the said ninth item; and that, when the testator directed the draftsman of his said will to dispose of the labor of Solomon for the benefit of the younger children until the youngest should become of age, and then to become the property of the respondent, the respondent remarked to testator that Solomon would be old by that time, and comparatively worthless, the said testator replied that it made no difference, as he would give to respondent the boy Floyd, absolutely and unconditionally, and make her equal with the children, and so instructed the draftsman to provide in said will, and said draftsman assured testator that the language employed in said will did convey a title to said negro boy to the respondent.

John A. Smith was introduced as a witness on the trial, and testified:

That he was present when the will of Elijah Boynton was made, and at that time the testator told the draftsman of the will to put down Solomon's labor to go to raise the four younger children, and after the youngest child became of age, Solomon to be the property of his wife Elizabeth. She being present, remarked: who would have him then! The testator then said to his wife: Betsy, I will give you the negro boy Floyd. The said Elizabeth has had possession of said boy Floyd from the testator's death until her intermarriage with D. D. Doyal, since which time the said Doyal has had possession of said negro boy; that the youngest of the older Boynton children has been of age about four years, and he, the witness, is guardian of the younger children, and has been their only guardian for four years or more.

It was also admitted by the written agreement of the counsel of the parties: That the negro boy Floyd, at the time of executing the will, in 1849, was four or five years old, and is worth about twelve hundred dollars; and that the youngest child of testator is about twelve years old; that Elizabeth Boynton, the widow, had and kept possession of all the negroes willed to the four younger children until her marriage with D. D. Doyal, and that, afterwards, the negroes remained on the place; that John A. Smith was appointed the guardian of the four younger children, the 2d of April,

1855, and that D. D. Doyal and Elizabeth Boynton married the 6th of May, 1855, and that the bill in this case was filed the 17th of March, 1856; and that John A. Smith has been the qualified executor of the testator, Elijah Boynton, since the probate of the will.

The testimony being closed, the presiding Judge charged the jury as follows, to wit:

The question made by the bill and answer was the construction of the ninth item of the will of the testator, in relation to the negro Floyd. It was the duty of the Court to construe the will, and the Court had construed the clause under consideration, and held, that the same disposition was made of Floyd that was made of the negro Solomon in the same item; that the words "also Floyd" meant that Floyd was disposed of in the same manner that Solomon was; that "also" meant "likewise"—"in the same way"—"in the same manner;" that, when the item said that "the labor of Solomon was to be used for the support of the children until the youngest arrived at age, and then to belong to testator's wife," and added "also Floyd," the proper and legitimate construction was, that Floyd was disposed of likewise—in the same way—in the same manner; and the decision of the Court, giving the will that construction, was excepted to, and the Supreme Court held that a different construction might be put upon the clause, and that parol testimony might be introduced to explain what disposition the testator intended to make of Floyd, and what interest he intended his wife to take in him. Testimony had been introduced for that purpose, and the answer of Elizabeth Doyal, when not responsive to any charge in the bill, was not evidence, and as the bill merely called for a construction of the will, and did not make any charge as to the disposition made of Floyd, that part of the answer of Mrs. Doyal in relation to the intention of the testator to "give her Floyd," not being responsive to any charge in the bill, was not evidence. Parol testimony, as to the intention of the testator in the disposition made of Floyd, had been submitted to the jury, and the question for them to determine was: What disposition was made of Floyd by the testator, and what interest did he intend his wife to take in him under the clause under consideration? If they believed that the proper construction of the clause before them was, that the same

disposition was made of Floyd that was made of Solomon, and if the parol testimony introduced showed that to be the intention of the testator, then they should decree that the labor of Floyd should be used and appropriated for the support of the children of the testator until the youngest should arrive at full age, and then vest in, and become the absolute property of his wife; but if they believed that such was not the proper construction of the clause according to the testimony which had been introduced, and if that testimony showed the intention of the testator to be, that Floyd should be the absolute property of his wife, they should so decree; and that it was not necessary that the word, absolutely, should have been used by the testator to vest the absolute right to Floyd in his wife.

To this charge of the Court, counsel for the defendants excepted.

The jury rendered a decree (amongst other things) that the labor of Floyd should go to raise the younger children of the testator, Elijah Boynton, and when the youngest child come of age, then the said Floyd to belong to Mrs. Elizabeth Doyal absolutely.

Counsel for the said D. D. Doyal and wife then moved for a new trial of said case on the following grounds, to wit:

1. Because the said charge of the Court was erroneous.

2. Because the verdict of the jury was contrary to law.

3. Because the verdict of the jury was contrary to evidence.

The presiding Judge overruled the motion and refused the new trial, and that decision constitutes the error complained of in this case.

DOYAL, for the plaintiffs in error.

BOYNTON, for the defendants in error.

*By the Court.*—LYON, J., delivering the opinion.

When this case was before this Court on a former occasion —28 *Geo. Rep.* 262—it was held that the clause of the will, as to Floyd, may be read two ways; either as an absolute gift to the wife, to take effect immediately, or as a disposition similar to that made of Solomon. The meaning of the will as to this negro, is, in the language of the books,

"equivocal," and parol testimony was allowed for the purpose of ascertaining which construction was intended by the testator—not from what was written in the will, for upon that the Court was to pass, and not the jury—but from what was said by the testator at the time of the execution of the will, to be proven by the witness.

From the manner in which the Court submitted the question to the jury, with his argument in support of his construction as being the true one, the jury may have felt and probably did feel, that it was their duty to construe the will from the words of the will rather than from the testimony of the witness, and that the views presented by the Court in the charge were the correct ones. We think this was error.

2. But, we think, this judgment must be reversed, on another and more conclusive ground, and that is: That the verdict is contrary to the evidence. The testimony of the witness Smith is, that the testator, at that point in the will, and while it was being written, in which Solomon is disposed of, said: "Betsy," addressing his wife, "I will give you Floyd." If this clause had been inserted in the will: "I, also, give Floyd to my wife"—and that is the sense of what testator did say—would there have been any doubt as to what disposition the testator meant to make of Floyd? We think not.

This testimony is very satisfactory, that the testator meant that his wife should take an absolute gift in the negro Floyd, and as the verdict was against that conclusion, a new trial must be had.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in refusing to grant a new trial on the ground that the verdict was contrary to evidence.