Boyd *vs.* Sachs and Freedenberg.

(Decided 12th January, 1894.)

FRANCIS J. BOYD *vs.* LOUIS SACHS and HENRIETTA SACHS, his wife, and PHILIP FREEDENBERG.

*Construction of Will—Life estate—Remainder—Marriage of Widow.*

A testator gave all of his estate, of whatever kind or nature, to his wife for life, provided she continued a widow, and devised his real estate after her death, to D. his son, and his heirs, provided that from the time of his or their coming into possession of the same, he or they should pay annually for ten years, one hundred dollars each to the testator's two daughters. And in the event of the death of D. before his mother, the real estate was devised to the said daughters and their heirs as tenants in common; and should the testator's wife marry again, from that time all her claim and right to the benefits of the will should cease, and the provisions respecting the children should take effect immediately. HELD:

That on the marriage of the widow, the estate vested in D. and was not divested by his subsequent death in the life-time of his mother.

D. having a fee simple indefeasible conveyed it to his mother, and one daughter conveyed to her in fee all her interest in the real estate. The other daughter conveyed to her mother for life, all her estate and interest under the will of the testator. The mother lived for twenty-four years after the acquisition of the titles of D. and one of the daughters, and thirty years after the conveyance from the other daughter. HELD:

That the charges in favor of the daughters were extinguished, and the widow was competent to mortgage the property, and a sale under the mortgage conveyed her fee simple title.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—In the Court below, at the close of the testimony on both sides, the plaintiff offered the two following prayers:

1. If the jury shall find from the evidence that Mary Jane Boyd was the daughter of Daniel McDonald, the elder, and the one mentioned by that name in his will, and that she afterwards died in 1864, having intermarried with the plaintiff, and that the plaintiff is the Francis J. Boyd mentioned as her husband in her will offered in evidence; and further, that Jane McDonald, wife of Daniel McDonald, the elder, re-married in 1848, and died in the year 1890, and that Daniel McDonald, the younger, died unmarried and without issue in 1882, then, under the true construction of the wills offered in evidence, the plaintiff is entitled to an undivided half interest in the property in question in this case, and the verdict of the jury must be for the plaintiff for such one-half interest.

2. If the verdict of the jury shall be for the plaintiff for a one-half interest in the property, then the plaintiff

is entitled to recover one-half of the rental value per annum of the same from November 18th, 1890, to the date of their verdict, less one-half of the annual taxes and insurance premiums on the same, and the water rent for that time, provided they find that plaintiff on that day demanded possession from defendant as half owner of the property.

The defendants offered six prayers, of which the following only was granted:

4. That under the proper construction of the will of Daniel McDonald, offered in evidence by the plaintiff, the real estate therein devised to his son, Daniel McDonald, became the absolute property of the said Daniel upon the re-marriage of his mother, and if the jury find that the mother of the said Daniel married after the death of the testator, and that her son, the said Daniel, was living at the time of and subsequent to said marriage, then the property described in the declaration vested in the said Daniel in fee simple, and the plaintiff is not entitled to recover.

The plaintiff specially excepted to the defendants' fourth prayer, on the ground that there was no legally sufficient evidence that Daniel McDonald, Jr., ever paid his sisters the sums charged in his father's will, or any part of the same.

The Court (RITCHIE, J.,) rejected the prayers of the plaintiff, and the first, second, third, fifth and sixth prayers of the defendants, and granted their fourth prayer. The plaintiff excepted, and the verdict and judgment being for the defendants, he appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*John J. Donaldson,* and *Albert Constable,* for the appellant.

*Jacob J. H. Mitnick,* and *Isidor Rayner,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

The decisive question in this case depends upon the construction of a will. Daniel McDonald having executed his last will and testament in such manner as to pass real estate, died in the year eighteen hundred and forty-five. In the determination of this case it is necessary to take into view every portion of the will, and we shall therefore quote the bequests and devises at large: "I give, devise, and bequeath all of my estate, of whatsoever kind or nature, to my beloved wife, for and during the term of her natural life, provided that during the same time she continue a widow and unmarried.

"And after her death, I will and bequeath all my personal estate remaining at the time of her death, to be equally divided among my children, or their representatives, (*per stirpes*) living at the time.

"And as to my real estate, I give and devise the same, after her death, to my son Daniel and his heirs, provided, however, that from the time of his or their receiving the same and coming to possession, he or they shall pay annually, for the space of ten years thereafter, the sum of one hundred dollars each annually to my daughters, Mary Jane and Caroline, if living, and if dead, to the heir or heirs or legal representatives of the said Mary Jane and Caroline, or the survivor of them.

"And I do further will, that in case of the death of my son Daniel, before his mother, that the said real estate so devised to him shall go to his sisters aforesaid and their heirs as tenants in common, and that, in the event of the marriage of both or either of them, their shares shall be so secured as to be free from any debts, contracts, or obligations of their respective husbands.

Boyd *vs.* Sachs and Freedenberg.

"And further, I do will that in the event of any future marriage of my wife aforesaid, that from that time all claim and right of my wife to the benefits of this will shall cease, and the provisions herein respecting my children, shall take effect immediately thereon." The widow, Jane McDonald, in the year eighteen hundred and forty-eight, married Michael McDonald, who died within a few weeks after the marriage. During the same year she married Seaver Hatch, who died in the year eighteen hundred and fifty-five. The son of the testator, and the two daughters executed deeds to their mother after the death of Hatch, her third husband. The deed of the daughter Mary Jane, executed in eighteen hundred and sixty, conveyed to her mother for life, all her estate and interest under the will of the testator. Daniel, the son, and Caroline, the other daughter, having previously made conveyances to their mother, executed a deed in eighteen hundred and sixty-six, which conveyed to her in fee all their right, title and estate in the real estate devised by the will of the testator. Mary Jane, in eighteen hundred and sixty-two, married Francis J. Boyd, and died in eighteen hundred and sixty-four, having previously devised all her property to her husband. Mrs. Hatch mortgaged the real estate above mentioned in eighteen hundred and eighty-one to Bruce Jenkins, and it was afterwards sold under the mortgage to Louis Sachs, one of the defendants. Daniel McDonald, the son, died in eighteen hundred and eighty-two. Mrs. Hatch died in eighteen hundred and ninety. Boyd brought an action of ejectment against Sachs and wife and Freedenberg, to recover the real estate devised by McDonald's will. Judgment having been rendered against the plaintiff, he has appealed to this Court.

Although the plaintiff's declaration proceeds for the whole of this property, in reality, as shown by the prayers for the instruction of the jury, he claims only

an undivided half of it. It is clear upon the face of the will that the testator intended that every interest which he had given to his widow should cease and be divested in case she should marry again. In the first place, it was given expressly on the condition that she should continue a widow and unmarried; and, secondly, he declared by a special clause of his will that, in the event of her marriage, all her claim and right to the benefits of the will should cease, and the provisions respecting the children should take effect immediately. Subject to these conditions all of his property was given to the wife for life, and after her death to the children. By the third of the clauses of the will which we have quoted, the real estate was given to his son Daniel and his heirs, encumbered with certain charges in favor of his daughters. When the widow married again, her life estate was defeated, and brought to an end, as effectually as if she had died; her rights were entirely extinguished, and the allotment of the property to the children was to be made without reference to her. This is explicitly stated in the last clause of the will. And without this clause it would have been the necessary result of its proper construction deduced from the manifest purpose of the testator. In *Clark, et al. vs. Tennison, et al.*, 33 *Md.*, 85, there was a devise to the testator's wife as long as she remained his widow, and at her death to his children. It was held, that it was the intention of the testator to give the property to the children on the termination of the wife's estate, whether that occurred by death or marriage; and that therefore upon her marriage the children's interest vested in possession. If the children's right of possession had been postponed to the death of the mother, inasmuch as her life estate had been forfeited by marriage, there would have been a *hiatus* until the period of her death, and to this extent there would have been an intestacy, which would have been in opposition to the

testator's purpose. And so in the present case, the widow's marriage was to have the same effect upon all the interests devised and bequeathed by the will as would have been wrought by her death. By the third clause of the will the real estate was given to Daniel, the son, after the widow's death, and by the fourth clause it was stated that in case of his death, before the widow, it should go to his sisters and their heirs, as tenants in common. The plain meaning of these clauses is that Daniel was to take the real estate on the termination of the widow's life estate, (by death or marriage,) and that if he should die before such termination, it should go to his sisters. It is impossible to read this will without seeing that the testator's intention was to divide his property among his children as soon as the provision was satisfied which he had made for his widow. It would defeat the whole scheme of the will to hold that the son was to take the real estate as soon as the widow should marry, and to lose his title to it if he died in her life-time. Especially unreasonable would this construction be in the light of the charges in favor of the sisters, which are imposed upon the real estate by the third clause of the will. As soon as the devise to him should vest in possession, he was required to pay each of them one hundred dollars a year, and this payment was to continue for the space of ten years. Now, if after paying these charges for ten years, his title is liable to be defeated by his death in the life-time of the widow, the devise might be an injury to him, instead of a benefit. A construction making such a result possible certainly would not be adopted, unless imperatively required by the words of the will. It is in opposition to a well established rule declared by this Court in *Glenn, et al. vs. Spry*, 5 *Md.*, 118, and in *Snyder vs. Nesbitt*, 77 *Md.*, 576: "Every devise is intended for the benefit of the devisee, and when a devise is thus encumbered, un-

32         v. 78.

less the devisee were to take the fee, he might, by dying before he had re-imbursed himself the amount charged out of the land, be a loser by the devise, and what was intended as a benefit become an injury; and the rule applies to every case where a loss is possible. * * * It makes no difference if the sum be less than the value of the land devised. No regard is paid to the disparity, however great." This rule of construction was applied to wills containing devises very different from the one now under consideration. But the rule is a salutary one, and it furnishes valuable aid in ascertaining the meaning of a will like the one before us. To say that Daniel, the son, was to take a fee, and after paying these annuities to his sisters, was to lose his title in case he died in the life-time of the widow, is to attribute a purpose to the testator which is not disclosed on the face of the will. The death of the widow after her marriage was an event which the testator did not take into consideration at all; he made none of his legacies or devises dependent upon it, because the re-marriage cut her off from all interest in his estate, and all connexion with it.

Daniel having a fee simple indefeasible conveyed it to his mother; the daughter Caroline conveyed to her in fee all her interest in the real estate, and the daughter Mary Jane conveyed all her interest in it to her for life; this meant all the annual payments which should become due in her mother's life-time. The mother lived for twenty-four years after the acquisition of the titles of Daniel and Caroline, and thirty years after the conveyance from Mary Jane. It is impossible to suppose that the charges on the land are now in existence. If they were unpaid at the time the widow acquired the fee, they were extinguished by the union of the title and the charges in one owner. *Mitchell vs. Mitchell*, 2 *Gill*, 236. The widow therefore was competent to mortgage the

property, and the sale under the mortgage conveyed her fee simple title. Consequently Boyd, the plaintiff below, took no title to this real estate under the will of his wife. This being the result to which we have arrived, it is irrelevant to consider in detail the prayers granted and refused by the trial Court.

*Judgment affirmed.*

(Decided 18th January, 1894.)

