### LOGAN *et al.* v. HAMMOND.

1. The estate involved is one for widowhood only, and comes within the provisions of § 3684 of the Civil Code of 1910; and the decision in this case is controlled by the prior rulings of this court in *Snider* v. *Newsom,* 24 *Ga.* 139, and *Doyal* v. *Smith,* 28 *Ga.* 262. A condition imposed by a testator upon a gift to his widow, to the effect that upon her remarriage the devise shall pass to his other heirs named, is not for that reason void as being in restraint of marriage. The intention to impose a penalty in terrorem must be manifest and unequivocal, and the provisions of the will in this case do not disclose any such intention.

2. The estate for widowhood as known to the common law is recognized in this State and provided for by the terms of section 3684 of the

Civil Code. Though contracts in restraint of marriage are void, the intention to impose a penalty for remarriage must be manifest and exclusive. The creation of a fee defeasible by marriage is not necessarily in restraint of marriage, because the beneficiary is submitted to an election between the acceptance of the gift and remarriage, should she prefer to remarry. The statement by the testator in the will sub judice, that he places upon the devises made to his widow in a previous item of his will "the restriction that should my said mentioned wife marry again, the real estate herein willed to her shall vest immediately in my said children, Jamie Lee, A. C., C. D., and W. J. Hammond, and Fannie May McConnell; but so long as my said wife remains single, the property to be hers to her exclusive use and ownership, and unless she marries again the said premises herein will be hers in fee simple forever," is not in restraint of matrimony, nor void, and the court erred in holding that the foregoing provision was void and that an absolute fee passed to such widow.

3. The court erred in holding that the defendants failed to present a meritorious defense; but the question of opening the default is left to be passed upon by the lower court in the light of the decision herein rendered.

No. 3448. APRIL 14, 1923.

Complaint. Before Judge Irwin. Chattooga superior court. September 16, 1922.

*C. D. Rivers, J. M. Bellah, John D. & E. S. Taylor,* and *Denny & Wright,* for plaintiffs in error.

*Henry & Jackson, G. E. Maddox,* and *Rosser & Shaw,* contra.

RUSSELL, C. J. Mrs. M. L. Hammond brought suit against E. S. Taylor and B. F. Logan, returnable to the September term, 1921, of Chattooga superior court. The action was upon a promissory note which was one of a series of four notes given by Taylor and Logan for the purchase-price of a tract of land which they had contracted to buy from Mrs. Hammond.

It is a matter of judicial knowledge that the terms of the superior court of Chattooga County are fixed for the second Mondays in March and September; and it is therefore to be assumed that a session of court was held at the court-house as provided by law, beginning on the second Monday in September, 1921; and though the record does not show how long the September term was in session, it appears that the September term was still in session on December 15, 1921. On the latter day his honor Judge Moses Wright called the appearance docket, and the suit of Mrs. Hammond against Taylor and Logan was entered in default in the absence of any defensive pleading. It is admitted that the

appearance docket was called without any previous order (as required by section 5653 of the Civil Code) naming December 15 or any other day for that purpose, and that therefore the parties had no notice that the appearance docket was to be called as and when it was actually called and the entry of default entered. It appears from a recital of the bill of exceptions that the defendants filed a motion to set aside and vacate the default on March 7, 1922, during the September term, 1921, and prior to the adjournment of that term. Thereafter, on the 13th day of March, 1922 (which was the first day of the March term, 1922, of Chattooga superior court), the defendants Taylor and Logan filed a motion to open said default, paid all of the costs, and announced ready to proceed to trial and plead instanter under the provisions of section 5656 of the Civil Code, Mrs. Hammond filed her answer to the motion to open the default, on July 13, 1922. The motion was heard by his honor F. A. Irwin, Judge of the Tallapoosa Circuit, presiding on September 16th, 1922, who refused to open the default, and thereafter directed a verdict finding for the plaintiff against the defendants the amount of the unpaid balance of the note sued on, together with interest and attorney's fees.

In the bill of exceptions error is assigned upon the final judgment as pointed out in *Lyndon* v. *Georgia Railway &c. Co.,* 129 *Ga.* 353 (58 S. E. 1047) ; and especial exception is taken to the judgment of the court refusing to open the default for the reason, as held by the court, that the defendants, in their offer to plead, failed to set forth a meritorious defense, as being a judgment necessarily affecting and controlling the ultimate result, this being done under the provisions of section 6144 of the Civil Code. The refusal of the court to entertain the defense presented by the defendants is the one controlling question in this case. The trial judge went fully into the evidence, and the direction of the verdict in favor of the plaintiff followed as a matter of course in view of the court's ruling upon the defense presented; and for this reason the defendants, present plaintiffs in error, seek, under the provisions of section 6144 of the Civil Code, a review of the following order: "After hearing evidence and argument on the within motion, it is ordered that the same be and is hereby refused and denied on the ground that the same fails to show any meritorious defense relied upon, that the provision of the will in

item 5 thereof is null and void and that under the will fee-simple title vested in the plaintiff, Mrs. M. L. Hammond." Thus the question presented for our consideration and determination is whether the learned trial judge erred in holding that the attempt of the testator to place a condition limiting the estate devised to his wife was so contrary to the public policy of this State that the restriction is void, and that the effect of the devise was to convey to the widow an estate in fee with absolute title.

After very careful and painstaking investigation we are satisfied that under the will of her husband Mrs. Hammond took only an estate during widowhood,— an estate defeasible by and in the event of her remarriage; and that for that reason she can not convey to the defendants perfect title to the land in question. So much of the will of the testator, D. J. Hammond, as is material to the subject of inquiry is contained in the second, third, fourth, and fifth items; for in these items he disposes of all of his realty. In the second item the testator refers to the fact that he has already made provisions stated therein for four of his children named therein, the land therein devised " being intended by me as a pro rata for the said children in life from my estate." In item three he devises to his wife, the plaintiff, the tract of land sold by her to the defendants, for the purchase of which the note in suit was given. The language used is as follows: " I herein will and bequeath to my said wife above named the following property " (minutely describing it), " all of which I give and bequeath to my wife as aforesaid, Mary Louise Hammond." In item four he bequeaths to his minor daughter the southern portion of the tract of land of which he had given the northern portion to his wife. Item five is the clause of the will which was before the lower court for construction and which is now before this court. This item is as follows: " By the terms hereof as my will I make the restriction, that should my said mentioned wife marry again, the real estate herein willed to her shall vest immediately in my said children, Jamie Lee, A. C., C. D., and W. J. Hammond, and Fannie May McConnell; but so long as my said wife remains single, the property to be hers to her exclusive. use and ownership, and unless she marries again the said premises herein will be hers in fee simple forever."

In the construction of a will the first object to be obtained is

the ascertainment of the intention of the testator. This is the paramount object. From the positive and unequivocal language of item five it is perfectly plain that the testator intended that his wife, so long as she remained a widow, should be the object of his bounty; but that should she elect to remarry, the obligation of providing for her comfort should be upon her husband. From the language he used it does not appear that the testator entertained any horror of his wife's remarriage, or the slightest objection to her remarrying. Construing the entire will together, nothing more appears to us than the natural desire of a father that the results of his labor, the property he has accumulated, shall descend to his own blood, rather than to strangers. The impulse is not unnatural, regardless of how much affection the testator may have had for his wife, because he could solace himself with the thought that if she remarried she would probably be well taken care of by her husband, without it being necessary for the larger portion of what the testator had owned becoming finally the property of his successor in the event that the second husband survived Mrs. Hammond. It is insisted, however, that the lower court held that the provision in the will looking to a termination of the widow's estate in the event of her remarriage is in restraint of marriage, therefore violative of public policy, therefore void, and in consequence that Mrs. Hammond took a fee, rather than a lesser estate defeasible by her marriage. Conceding as a general principle that all contracts in restraint of marriage are void, it is nevertheless to be borne in mind that many of the ancient cases from which almost numberless rulings have been deduced were based upon the canon and not upon the common law, that there is a broad distinction recognized between bequests of personal property and devises of real estate, and that in various jurisdictions there is a marked difference between the application condemning contracts or gifts in restraint of marriage as related to single women or virgins, and widows. In the present case the rule of public policy relied upon is sought to be applied as to real estate, and the beneficiary is a widow; and so we need not at this time concern ourselves with authorities based upon the canon law. Nor do we think that we need go further than to the provisions of sections 3665 and 3684 of the Civil Code, to find that estates for widowhood are recognized in this State. Section

3684 is as follows: "An estate may be created during widow-hood, and such estates shall be subject to the same rules as life-estates. Limitations over upon the marriage of a widow shall be valid, unless such limitations are manifestly intended to operate as a restraint upon the free action of such widow in respect to marriage, and are not simply prudential provisions for the protection of the interest of children or others in such event; in such cases they are void." By express provision of the code, then, limitations over upon the marriage of the widow are valid unless they are *manifestly intended* to operate as a restraint upon her free action in respect to marriage; and this makes it incumbent upon him who in any case contends that the provisions of a will are in restraint of marriage to show that it was the mani-fest intention of the testator. We do not think that this appears from the language of the will, either taken as a whole or analyzed by items.

We think that the questions in this case are controlled by the rulings of this court in *Snider* v. *Newsom*, 24 *Ga.* 139, and *Doyal* v. *Smith*, 28 *Ga.* 262-264. In *Snider's* case a clause in the will of Cæsar A. Savage, similar to that now before us, was before the court. Item two of his will was as follows: "I give, devise, and bequeath all my estate, both real and personal, save what shall be necessary for the payment of my just debts and charges, to my beloved wife, Frances M. T. Savage (subject to the con-ditions herein named), with the power to sell, convey, give or dis-pose of, by deed, will, or any way she deems proper. But in case my said wife, Frances M. T. Savage, shall marry again after my decease, then and in such case I revoke the foregoing bequest to her and direct that the same shall from thenceforth cease and determine, and the whole of my estate, both real and personal, hereinbefore given to her, I give, devise, and bequeath to my five children" (naming them), "to be divided equally between them, share and share alike; my wife to account for the whole of my estate that may, up to that time, have gone into her hands, ex-cept such as she may have expended for the support, maintenance, and education of herself and the said children, my intention being to exclude her entirely from any participation whatever in my estate in case she should ever marry again after my death. And in case she does not, then she is to have the whole, to give to my

children, at such times and in such quantities, or none at all, as she pleases; my aim being in this particular to make my children dependent for any part or share of my estate solely upon their mother and my said wife, in case she remains a widow." And the point was made that since the restriction as to remarriage was in restraint of matrimony, and illegal and void, the widow got an absolute title. The defendant Newsom demurred to the bill. The lower court sustained the demurrer and dismissed the bill, and this court affirmed that judgment. Judge Benning delivered the opinion of the court, holding that the estate *during* widowhood is as old as the common law, and that such an estate is precisely equivalent, in import, to an estate to a widow for her life on the condition that she does not marry again. The headnote in *Snider's* case is extremely brief, and in its language unique. But it seems to cover, when read in connection with the opinion of Judge Benning, every phase of the case. It is as follows: "A man's will was to this effect: I give 'all my estate' to my wife; 'but in case' she marry again, I give it to my five children. She married again. *Held,* that she lost the estate, and it went to the children."

In *Doyal's* case, supra, the court had before it the construction of the ninth item of the will of Elijah S. Boynton, which was as follows: "At my death I give and bequeath to my wife, Elizabeth Boynton, during her lifetime or widowhood, the west half of my lands, with a good house and farming tools, two cows and calves, and one year's provisions for the family, and household and kitchen furniture sufficient for the use of the family. Also Solomon's labor is to go to raise the children. When the youngest becomes of age, he shall be the property of my wife, Elizabeth Boynton, and also Floyd, a negro boy, and fifty dollars for the use of the family." Two questions were presented and are dealt with in the headnotes. The first concerns the admission of parol testimony to explain equivocal clauses in the will, and as to this point the case subsequently came back to this court. 31 *Ga.* 198. But in reply to the contention that the provisions of the ninth item terminating the estate being a restriction on marriage, the second headnote is as follows: "A limitation of an estate by a testator to his wife, during her natural life or widowhood, is good." In a discussion of that condition in the opinion

Judge Lumpkin said: "As to the other clause terminating this estate being a restraint on marriage, we think there is nothing in it. This is no condition imposed by way of penalty, but the ordinary alternative limitation of an estate upon the natural life or widowhood of the devisee. These limitations are of daily occurrence in wills; and yet no one ever thought of construing them as penalties, held in terrorem over the widow to prevent her from marrying again."

We deem these two cases in point, and from reading the opinion of Judge Benning in the *Snider* case, which was rendered in 1858, it seems to be clear that what is now section 3684 of the present Civil Code was incorporated from the opinion in *Snider's* case. Though this court has had no occasion to heretofore cite *Snider's* case, it has been cited in other jurisdictions, and will be found not only in 40 Cyc. 1702, but in the note in 53 Am. D. 111, to the Mississippi case of Pringle v. Dunkley, 14 Smedes & Marshall, 16.

3. It seems from the record and especially from the language of the final order of the court, which we have quoted, that the other grounds of the motion to open and set aside the default were approved by the trial judge; but if we should be mistaken as to this, the discretion of the lower court as to the other grounds of the motion may be exercised in the light of what is herein decided.             *Judgment reversed. All the Justices concur.*