## FOOTE v. FOOTE et al.
## No. 9410.

Court of Civil Appeals of Texas. San Antonio.

Oct. 31, 1934.

Rehearing Denied Nov. 28, 1934.

T. H. Ridgeway, of San Antonio, for appellant.

Lively, Dougherty & Alexander, of Dallas, for appellees.

BICKETT, Chief Justice.

This suit was instituted on February 16, 1932, by appellant, Annie Foote, the surviving widow of John D. Foote, deceased, against appellees, J. B. Foote, M. V. Foote, Mary McCallum and her husband, L. C. McCallum, and Beatrice Hale and her husband, Joel N. Hale, to construe the will of the decedent.

The will of John D. Foote, dated January 18, 1927, probated in Bexar county, Tex., on November 16, 1927, upon the application of Annie Foote, contained three articles. The first directed the payment of debts, and the last-named Annie Foote as independent executrix without bond. Article two read:

"I give, devise and bequeath unto my beloved wife, Annie Foote, all the estate of any kind or character whatsoever, real, personal or mixed, wheresoever situate and in whatsoever form the same may be that I own or am to own at the time of my death forever.

"This will to become null and void in case she should re-marry."

An agreed statement of evidence showed the facts. John D. Foote and Annie Foote were married on April 27, 1925, and were living together as husband and wife at the time of his death on October 5, 1927. At the latter date he was sixty-three years of age, and she was thirty-eight years of age. The only surviving heirs at law of John D. Foote are Annie Foote, his wife, J. B. Foote and M. V. Foote, his brothers, and Mary McCallum and Beatrice Hale, his sisters. John D. Foote, at the time of his death, owned, as the property of his separate estate, realty located in Bexar, Jeff Davis, Nueces, and Rusk counties, Tex. The entire property of the estate was shown by the inventory to be the separate property of the decedent and to consist of cash in bank $4,442.73, personalty $700, and realty $15,922.43. Since the time of the death of John D. Foote, Annie Foote has been in possession of and has collected the revenues from all of the property, except the one-fifth undivided interest in the Rusk county land, which was the old Foote family homestead and of which she has

never had possession. Annie Foote qualified as executrix under the will on the same date on which it was probated.

█ A provision that a devise in fee to the testator's wife shall terminate in the event of a subsequent marriage by her is valid, as against the objection that it is a condition in restraint of marriage contrary to public policy.

The absence of any decision in Texas under facts precisely similar to those of this case and the contrariety of judicial expression among the earlier cases require an examination of the origin and development of legal theories as to the validity of testamentary provisions in restraint of marriage. The exigencies of state, resulting from the depletion of population and the devastation of country following the civil wars, required the legal condemnation of all restraints, however slight, upon the marriage of Roman citizens. It became a settled principle of the civil law that restraints upon marriage were against public policy and void. Thence, the canon law derived the idea and took over almost literally the crystallized statement of the rule. The ecclesiastical courts in England, therefore, saw nothing novel in this regard when they exercised their jurisdiction over matters of family affairs and estates of deceased persons. Nor did the chancery courts, on succeeding to some of the jurisdiction of the ecclesiastical courts, soon question the basis or the extent of the rule. But conflicts in decision between the courts of law and the courts of chancery were inevitable, for the former had jurisdiction over "devises of realty" and the latter over "bequests of personalty," and the former decided according to the common law and the latter according to the canon law. The line of cleavage between them is illustrated in the cases in which "devises" or "bequests" were made on condition that the beneficiary should not marry without the consent of a person designated by the testator, a condition which was valid under the common law but void under the canon law. Of such nature were Hervey v. Aston, 125 English Reprint 1067 (by Lord Chief Justice Willes in 1738), and Scott v. Tyler, 29 English Reprint 241 (by Lord Chancellor Thurlow in 1788). In the latter case the Lord Chancellor said: "The early cases refer in general to the canon law as the rule by which all legacies are to be governed. Towards the latter end of the last century and beginning of the present century the matter is more loosely handled. The canon law is not referred to as affording too positive a rule, but these conditions are treated as par-

taking of the force allowed them by the law of England, but at the same time as unfavorable to the good order of society. At length it became a common practice that such conditions were only in terrorem. I do not find it was ever seriously to be supposed to be a testator's intention to hold out the terror of that which he never meant to happen, but the court has made such conditions amount to no more. * * * About the middle of the present century doubts arose which divided the opinion of the first men of the age. The difficulty seems to have been in reconciling the cases. The prevailing opinion was that devises of land should follow the rules of the common law, and legacies of money the canon law. The question remains unresolved, what is the nature and extent of the rule." Suffice it to say, the rule of the common law upon the question, that the condition is valid, ultimately prevailed.

Now, with respect to the rule of the ecclesiastical courts, that a testamentary provision for the termination of a bequest to the testator's widow if she should marry again is a void restraint on marriage, it is clear that those scholars of the church, to whom modern civilization owes an incalculable debt of gratitude for the preservation of the learning of the ancients, copied with due precision the general rule of the civil law but failed to take into account the exception in the case of a man's own widow. For the rigor of the general rule was so contrary to the sentiment of the Romans who made it part of their law that it had to be relaxed by the Lex Julia (B. C., 45) and subsequently by the Lex Papia Poppaea, so as to permit a man to make a bequest to his widow upon condition that she maintain her widowhood. This exception became as well recognized as the rule itself.

As for the common law, it recognized the distinction between first and second marriages as to the validity of conditions in restraint of marriage. Under the customs and usages of the Anglo Saxons before the arrival of the Conqueror, there is no known rule against a man making a gift to his wife conditioned on the continuation of widowhood. By the most ancient common law on the subject, the law of Gavelkind in Kent, it was expressly provided that the subsequent marriage of a husband entitled to an interest (the right of freebench) in his wife's estate should operate as a forfeiture thereof. In Bacon's Abridgment it is shown that the common law recognized the right of the husband to make a devise to his wife as his widow only. Much of the legal learning upon the subject is shown in

Hervey v. Aston, supra, Scott v. Tyler, supra, and the cases next referred to. In Lloyd v. Lloyd (1852) 61 English Reprint 338, the court held: "According to the authorities, such a condition is not void as to the wife, the law recognizing in a husband such an interest in his wife's widowhood as to make it lawful for him to restrain her from making a second marriage, by imposing a condition that on such marriage any provision he may have made for her shall cease." In Newton v. Marsden (1862) 70 English Reprint 1094, the court held valid a provision that a trust created by the testator for his nephew's widow should cease if she should marry again, and, after reviewing the authorities, said: "It seems to me that the real principle in the case of a gift by a husband is, that the condition is not regarded as an arbitrary prohibition of marriage altogether, but the conditional gift is considered as made to the widow because she is a widow and because the circumstances would be entirely changed if she entered into a new relation. The very same consideration applies to this gift, and I think it would be reasonable on a will of this kind to hold that the case falls within the principle which governs a man's own widow. But I prefer to rest any decision on what is perhaps the safer as well as the broader ground, namely, that there is no authority in the common law, independently of the civil law, for saying that a condition restraining a second marriage is void; and, having regard to the observations of Lord Loughborough, I do not hesitate to say that I shall not introduce any new doctrine to carry the rule of avoiding restraints on marriage beyond the old authorities." In Allen v. Jackson (1874) 15 English Reports (Moak), 815, the court in upholding a similar condition said: "The general restraint of marriage, for some reason or other, probably a good reason, is to be discouraged, and a condition subsequently annexed by way of forfeiture to a marriage is void. That is the law both as to man and woman; but it has been most distinctly settled that, with regard to the second marriage of a woman, that law does not apply, that, whether the gift be to a widow by a husband or a gift to the widow by some other person, the law does not apply to that case, and that such condition is perfectly valid."

The courts in this country, influenced to some extent by the decisions of the ecclesiastical courts and by the early decisions of the chancery courts, have drawn fine distinctions and assigned curious reasons in their tendency to uphold testamentary gifts conditioned against subsequent marriage. To support such conclusions, the courts have found differentiations in particular cases between realty and personalty, limitations and conditions, conditions precedent and conditions subsequent, gifts with limitations over and gifts without limitation over, the presence of children and the absence of children, the existence of relationship and the lack of relationship, a subsequent marriage and a first marriage. 5 Pomeroy, Equity (4th Ed.) 1957, note 4. But the modern view is as stated by that author (loc. cit. p. 1962): "It seems to be settled by an overwhelming weight of authority that limitations and conditions, precedent or subsequent, tending to restrain the second marriage of women are valid and by the most recent decisions the same rule has been applied to the second marriages of men."

The condition of defeasance provided in this will, that, if the testator's wife should marry again, the estate devised to her should terminate, is valid in the light of reason and authority.

The devise is made, in the first instance, because the beneficiary is the wife and, in contemplation of the testator, will be his widow. The provision for the latter condition is prompted by every proper sentiment and needs no justification. The property belonged to the testator to dispose of as he saw fit. But the fact that he yielded to the promptings of sentiment and the demands of moral obligation to make provision for the support of his widow when alone in the world after his demise furnishes no argument that he be beneficent to the extent of permitting a second husband to enjoy his bounty. The successor would rest under the same sentimental, moral, and legal obligations to support and maintain the wife as had the testator in his lifetime. The same reasons that may have required the original devise for the widow's welfare cannot be fairly said to suggest a future bounty for enjoyment by her and another. The testator had a right to be unconditionally generous if he so desired; but he expressed a contrary intention, as he, also, had the right to do.

Nor can it be said that the withdrawal of the devise from the beneficiary, the testator's widow, if she should become the wife of another, would be against public policy. The provision is called "a restraint" upon marriage. But it does not in any true sense "restrain" any one. If a subsequent marriage contemplated by the widow should rest upon such motives as that she or the prospective husband would be "restrained" from the marriage by the contemplation of the loss of the devise, then such a marriage would be a most

unfortunate one for the individuals as well as for society at large. The public welfare would not be subserved, but quite the contrary. If there be any element of public policy involved in such an imagined instance, it is against the encouragement of the marriage of a widow and another who would be affected by the circumstance of the imminent loss of the property. The testator's intention is clear, and there is no reason of public policy, or otherwise, for not giving effect to it.

Perhaps, no clearer statement of the matter is to be found than that of Chief Justice Gibson in Commonwealth v. Stauffer, 10 Pa. 348, 354, 51 Am. Dec. 489: "I know of no policy on which such a point could be rested, except the policy which, for the sake of a division of labour, would make one man maintain the children begotten by another. It would be extremely difficult to say, why a husband should not be at liberty to leave a homestead to his wife, without being compelled to let her share it with a successor to his bed, and to use it as a nest to hatch a brood of strangers to his blood. Such is not the policy of the statute of wills, which allows a man to devise his land 'at his own free will and pleasure;' nor is it the policy of the common law, which allows him to give his property on his own terms, or not at all; and, if he might not do the one, he would assuredly do the other; so that it is not easy to see how the cause of population would be promoted by binding his hands. To throw the widow of a landless merchant on her dower at the common law, would not do it. It may be the present policy of the country to encourage reproduction—though the time will certainly come when excess of population will be a terrific evil here, as it is elsewhere—but no political regulation, which looks no further than inducements to second marriage, will either advance or retard it."

In Littler v. Dielmann, 48 Tex. Civ. App. 392, 106 S. W. 1137, 1139 (writ of error denied), this court upheld a condition subsequent, terminating the enjoyment of the unconsumed property devised to the testator's wife, with a limitation over to his children. The court said: "The evident intention of the testator was to place all his property in the hands of his wife for her maintenance, use, and support, coupled with the power of alienation or disposition of it as she might deem fit. He was providing for her comfort and support alone just so long as she remained a widow; but he desired to preserve the benefits arising from his property to his wife alone, and did not desire to have the property used for the maintenance and support of another hus-

band. The object and purpose of the widow and the man she was preparing to marry was to defeat the will and intention of the testator, and the plan of passing deeds between themselves was chosen for the purpose of defeating the will and preventing the children of the dead husband from coming into their own, and the prime issue in this case is as to whether the courts of Texas will place their approval upon the scheme concocted for that purpose."

Haring v. Shelton, 103 Tex. 10, 122 S. W. 13, 14, held valid a devise to the testator's wife "in fee simple forever, or so long as she shall remain a widow," upon the modern view (rather than upon refined distinctions) of effectuating the testator's intention. The court said, "It is evident that Shelton did not intend to give to his wife the lands in question, free of the claims of any one in the future; but it was his purpose that his widow should have the property as her own, subject to the condition that she should remain a widow." It is significant that no reference was made to Little v. Birdwell, 21 Tex. 597, 73 Am. Dec. 242, which upheld a devise to a testator's wife "during her lifetime or widowhood" on the ground that the provision was a limitation instead of a condition.

In Glass v. Johnson, 297 Ill. 149, 130 N. E. 473, 474, illustrative of the modern decisions, the Supreme Court of Illinois held valid a condition in a will similar to the one under consideration. That will devised all of the testator's property to his wife. It provided, by a subsequent clause, "In case, however, my said wife should marry again after my death then the above provisions relating to her shall be null and void, and she shall only have of my estate, both real and personal, so much as the law of this state shall give her as my widow." There was no limitation over or other disposition of the property. The court said:

"The question is whether Emma Glass took a title in fee simple by the will or only a conditional fee. * * * The express words of the third clause clearly and unequivocally indicate the testator's intention to limit the estate in fee simple by making it subject to the condition that it shall terminate if the devisee shall marry again after the testator's death, and in such event she shall only have so much of the testator's estate as the law would give her as his widow. This condition, though in total restraint of marriage, is valid. There is an exception to the rule that a testator may not impose a total restraint upon marriage as a condition of a devise in the case of a hus-

band making a devise to his wife. He may rightfully impose the condition of forfeiture upon her subsequent marriage. * * *

"The want of a devise over makes no difference, and the condition is just as effectual and fatal as if the will itself made a specific disposition of the estate upon the happening of the condition."

Other authorities sustaining the conclusion first above announced are: Wilmington Trust Co. v. Houlehan, 15 Del. Ch. 84, 131 A. 529; Appleby v. Appleby, 100 Minn. 408, 111 N. W. 305, 10 L. R. A. (N. S. 590, 117 Am. St. Rep. 709, 10 Ann. Cas. 563; Anderson v. Crawford, 202 Iowa, 207, 207 N. W. 571, 45 A. L. R. 1216; Bennett v. Packer, 70 Conn. 357, 39 A. 739, 66 Am. St. Rep. 112; Chapin v. Cooke, 73 Conn. 72, 46 A. 282, 84 Am. St. Rep. 139; Dumey v. Schoeffler, 24 Mo. 170, 69 Am. Dec. 422; Crawford v. Thompson, 91 Ind. 266, 46 Am. Rep. 598; Bostick v. Blades, 59 Md. 231, 43 Am. Rep. 548; Coppage v. Alexander, 2 B. Mon. (Ky.) 313, 38 Am. Dec. 153; Cummings v. Lohr, 246 Ill. 577, 92 N. E. 970; Giles v. Little, 104 U. S. 291, 26 L. Ed. 745; Boyd v. Sachs, 78 Md. 491, 28 A. 391; Opel v. Shoup, 100 Iowa, 407, 69 N. W. 560, 37 L. R. A. 583; Logan v. Hammond, 155 Ga. 514, 117 S. E. 428; Knight v. Mahoney, 152 Mass. 523, 25 N. E. 971, 9 L. R. A. 573.

█ █ Under the cardinal rule for construction of wills, that the testator's intention must be gathered from the instrument as a whole, it is clear that the addition of the words, "This will to become null and void in case she should remarry," following a devise in fee to the testator's wife, was intended to stipulate a condition upon the happening of which the estate devised should terminate. The quoted words immediately followed the devise and were a part of the same section or article. The words "this will" referred to the gift, devise, or bequest just made; they were of the same effect as would have been "this bequest or devise." The form of expression is not invalid as being repugnant to the will. Upon the happening of the condition named, the will would not be defeated, but the estate devised would end and the property would pass under the statute of descent and distribution to the testator's heirs at law, as if the testator had specified them by name or class.

█ The will having made a devise of the property to the testator's wife and having provided that the estate so devised should cease upon her subsequent marriage, she took an estate in fee, defeasible, however, in the event she should marry again, and, in that event, the title would ipso facto become vested in fee simple in the heirs at law of John D. Foote, deceased, living at the time of such subsequent marriage. Darragh v. Barmore (Tex. Com. App.) 242 S. W. 714.

The judgment of the district court is affirmed.