AMALIE LITTLER ET AL. v. JOHN C. DIELMANN ET AL.

Decided January 8, 1908.

1.—Will—Power—Fraudulent Execution.

A will contained the following provisions: "I do hereby give, will and bequeathe unto my beloved wife all the estate that I shall leave or die possessed of, including real, personal and mixed property, leaving the same to her absolutely and in fee simple; provided, however, that if my said wife should remarry, then immediately upon the remarriage all such part of my estate as may not have been consumed by my wife, or remain in her hands, shall pass to and

vest in all of my children, share and share alike, absolutely and in fee simple. This provision shall in no manner prevent my wife from selling and disposing of or using my estate as she sees fit, so long as she remains unmarried." Held, that conveyance by the surviving wife to her intended husband and a reconveyance by him to her upon the éve of her remarriage was fraudulent as to the children and did not prevent the estate from vesting in them upon the remarriage of the wife, as provided by the will.

### 2.—Stare Decisis.

The doctrine of stare decisis does not apply to obiter dicta.

### 3.—Will—Provision Against Marriage.

A provision in a will that property devised to the surviving wife should pass to and vest in the testator's children in case of the remarriage of the wife, is valid in this State.

### 4.—Unwilling Witness—Leading Question—Practice.

Where a witness clearly manifests a desire to evade answering questions propounded to him it is not error for the trial court to allow leading questions.

### 5.—Evidence—Former Testimony.

Testimony given upon a former trial by a party to the suit is competent evidence when the testimony is in the nature of admissions against interest.

### 6.—Married Woman—Surety for—Judgment Over.

One who becomes surety for husband and wife by pledging real estate, does not become entitled to judgment over against the married woman, in case he is held to pay the debt, without alleging and proving that such indebtedness was incurred for the benefit of the separate estate of the married woman.

Appeal from the 45th District Court, Bexar County. Tried below before Hon. J. L. Camp.

*Shook & Vanderhoeven,* for appellants.—When a testator by will gives, devises and bequeathes to his wife absolutely and in fee simple all the estate that he shall leave or die possessed of, and stipulates that if his wife should remarry, then immediately upon her remarriage all such part of his estate as may not have been consumed by his wife, or remain in her hands, shall pass to and vest in his children, but further provides that such stipulation shall in no manner prevent his wife from selling, disposing of or using his estate as she may see fit, so long as she remains unmarried, and the wife during her widowhood conveys such property (so devised and bequeathed to her) to a third person by a deed of conveyance duly executed, acknowledged and delivered by her, the deed from the surviving widow operates to vest the title in the grantee named therein and is the due execution of the power conferred in the will, and this whether the deed was voluntary and without consideration or not. Hanna v. Ladewig, 73 Texas, 37, 40-3; Roberts v. Lewis, 153 U. S., 367, 375-9; Barnett v. Deturk, 43 Pa. St., 92; Howard v. Carusi, 109 U. S., 725, 729; Potter v. Couch, 141 U. S., 296, 315.

When the title to land is largely or wholly dependent upon a previous decision of a court of last resort, and such court has announced principles affecting the acquisition of title to real property, and settled a rule of property upon which rights are predicated and under which titles have vested, and when litigants, attorneys

and conveyancers have acted under and relied upon such decision, the accepted doctrine of stare decisis applies, even though in the opinion of the court the decision is anomalous and not sound. Sydnor v. Gascoigne, 11 Texas, 449, 455; Smith v. Power, 23 Texas, 29, 32; McKeen v. James, 87 Texas, 199, 200; 26 Am. & Eng. Enc. Law (2d ed.), 180, 181.

A person becoming surety for husband and wife by pledging real estate, does not become entitled to a judgment over against a feme covert, in case he is held to pay the debt, without alleging and proving that such indebtedness was incurred for the benefit of the separate estate of such married woman. Rev. Stats., 1905, art. 2970; McFaddin v. Crumpler, 20 Texas, 374, 376; Wadkins v. Watson, 86 Texas, 194, 199.

*R. J. Boyle, J. R. Davis* and *W. F. Ezell,* for appellees.—The pleading and evidence raised an issue of fact as to whether the appellant, Amalie Littler (formerly Amalie Pauly), had disposed of the property in controversy prior to her marriage to George Littler. To operate as an effectual transfer of the title to land, it is necessary that the deed should be delivered. The question of delivery is one of intention. To complete the delivery of a deed, which is necessary to pass title to land, it must be placed by the grantor in the control of the grantee with the intention that it shall pass the title. The testimony tended to show that the deed in question was not delivered with the intention to pass the title. The court therefore did not err in refusing appellant's peremptory instruction. Steffian v. Milmo Nat. Bank, 69 Texas, 518; Blockman v. Schiermann, 21 Texas Civ. App., 520; Koppelman v. Koppelman, 94 Texas; Tiedeman on Real Property, sec. 812; 1 Devlin on Deeds, sec. 262; Martindale on Law of Conveyancing, sec. 206, note 1; Steel v. Miller, 40 Iowa, 402; Burkholder v. Casad, 47 Indiana, 418; Stiles v. Probst, 69 Illinois, 382; Arthur v. Anderson, 9 S. C., 234; Fraser v. Davie, 11 S. C., 56.

If it be conceded that, under the will, the widow took an estate in fee in the property, with power to sell, dispose of or use the property, it was determinable upon the condition expressed, and the children took a contingent remainder in all of said estate which had not been consumed by the widow or remained in her hands at the time of her remarriage, but the widow held the property in trust for the children, except as their right was limited by the right given her to sell, dispose of or use the estate during her widowhood, but under this power she had no right to make a fraudulent disposition of the property for the purpose of defeating the rights of the residuary devisees. Art. 2544, Rev. Stats.; McMurry v. Stanley, 69 Texas, 232-3; Gibony v. Hutcheson, 20 Texas Civ. App., 581; Danish v. Disbrow, 51 Texas, 240-1; May v. S. A. & A. P. Townsite Co., 83 Texas, 507; Englefield v. Englefield, 1 Vern., 443.

The evidence shows that the conveyance by Amalie Pauly to Geo. Littler, if it passed any title, only passed the legal title to him, and that he held the property in trust for her, and was in effect a conveyance to herself, and therefore void insofar as these appellees

are concerned. Art. 2544, Rev. Stats.; art. 2137, Rev. Stats.; Lott v. Kaiser, 61 Texas, 673; Bump on Fraudulent Conveyances, p. 239; Lane v. Lane, 80 Me., 570.

If there was no intention upon the part of Mrs. Pauly to defraud the children of their interest in the property, and the transfer was only for the purpose of placing the legal title in her so that she could manage and take care of the property, after her marriage, and thus save the expense of guardianship proceedings, then she still holds the property in trust for them, and they are entitled to have their interest established. Cordova v. Lee, 14 S. W. Rep., 208; Hamblin v. Warnecke, 31 Texas, 91; Fisher v. Wood, 65 Texas, 199; Albright v. Oyster, 19 Fed. Rep., 849; Wood v. Rabe, 48 Am. Rep., 640; Stubblefield v. Stubblefield, 45 S. W., 965; Wallace v. Lewis, 60 Texas, 247; McClenny v. Floyd, 10 Texas, 161; Hendrix v. Nunn, 46 Texas, 146; Montgomery v. Noyes, 73 Texas, 203.

In this State the rules of the common law are not applicable as to the quantity of interest or estate that may be created and vested by will; and any person may, by will, create and vest in another person any estate in land which does not violate the constitutional restriction against perpetuities and entailments, and the executory devise to the children in the case at bar is valid. Little v. Birdwell, 21 Texas, 598; Laval v. Staffel, 64 Texas, 373; McMurry v. Stanley, 69 Texas, 227; Lockridge v. McCommon, 90 Texas, 234; 2 Redfield on Wills, p. 294.

The rule of stare decisis is not applicable in this case, because the questions here presented are different from those decided in the case referred to by appellants, but if it should be held that they are the same, then we submit that this decision stands singly and alone, and has never been referred to by any other court in any decision since its rendition, and can in no sense be said to have been acquiesced in, and it has not been applied to any other case, and it was never intended by said decision that a rule should be established by which a beneficiary under a will, with power to sell the property of the testator, would be enabled, by a bogus transfer, such as the one in this case, to appropriate to her own use all of the property of the testator, to the exclusion of all the other beneficiaries, in violation of the express intention of the testator. Willis v. Owens, 43 Texas, 48; Higgins v. Bordages, 88 Texas, 458; Northern Pac. Ry. v. Sanders, 47 Fed. Rep., 604; Bentley v. Goodwin, 38 Barb. (N. Y.), 633; State v. Fosdick, 1 Ohio Cir. Crt., 265.

The evidence in this case shows that the money borrowed by Amalie Littler, and for which Henry Pauly became surety, was incurred for the benefit of and to preserve her separate estate, except the item of taxes, for which she was awarded judgment against appellees. Henry C. Pauly, as a surety at her request, was therefore entitled to judgment over against her. Revised Statutes, 1905, art. 2970; Grant v. Whittlesey, 42 Texas, 320; Evans v. Breneman, 46 S. W. Rep., 80.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by John C. Dielmann against Amalie Littler, Geo. F. Littler, Henry C. Pauly,

Edmund B. Pauly, Irma A. Pauly and D. & A. Oppenheimer, for the purpose of procuring the partition of a certain lot or parcel of land on East Commerce Street, which he alleged was in the joint ownership and possession of himself and Henry C. Pauly, until the death of the latter, which occurred on January 28, 1902. It was alleged that there survived said Henry C. Pauly, his wife, Amalie Pauly, who had become Amalie Littler by intermarriage with George F. Littler, and three children. Henry C., Edmund B. and Irma A. Pauly, and that he had left a will in which he bequeathed his entire estate to his wife, absolutely and in fee simple, with the provision that in case of her remarriage all such part of the estate as had not been consumed by his wife or remained in her hands should pass to and vest in all the children, share and share alike; that the will was probated, and that on May 8, 1903, Amalie Pauly conveyed the one-half interest held by her in the property to Geo. F. Littler, who on May 9, 1903, reconveyed the property to Amalie Pauly and on May 10, 1903, married her. It was further alleged that the children of Henry C. Pauly were claiming an interest in the land under the terms of their father's will, contending that the conveyances between Littler and Amalie Pauly were void. That the Littlers had given a deed of trust to D. & A. Oppenheimer on an undivided one-half interest in the property on September 1, 1906, to secure a loan of $8,000. There was a prayer for a receiver, for adjustment of the equities among the parties, that the property be sold and a proper distribution of the proceeds be made.

Henry C., Edmund B. and Irma A. Pauly answered, the latter by her guardian, alleging that the deeds, by and between Littler and his intended wife, were executed for the purpose of defeating the terms of their father's will and for the purpose of defrauding the children out of their interest in the property, and that they were entitled to their interest in the property. They also alleged a conversion of the rents by their mother and prayed for an accounting, for a judgment for their share of the rents, for a cancellation of the deeds and for one-fourth of the property.

Littler and wife answered setting up the will and the right of Amalie Pauly to sell the land to Littler and that his reconveyance to her vested the title in her to one-half the property.

D. & A. Oppenheimer answered that they had a deed of trust on one-half the property executed to them by Littler and his wife and Henry C. Pauly and asked that their lien be fixed thereon and if a sale of the land was decreed that the indebtedness of the Littlers to them be paid off in full.

At the request of the Paulys, the court presented the case on special issues, which, together with the answers of the jury, are as follows:

"1. Did Amalie Pauly, now defendant Amalie Littler, intend to part with the title to the property in controversy when she executed the deed of May 8, 1903, to Geo. F. Littler? Answer yes or no.

"Answer: No.

"2. Was it understood and agreed between Geo. F. Littler and Amalie Pauly at and before the execution of the deed of May 8,

1903, from Amalie Pauly to Geo. F. Littler, that he should re-convey said property to Amalie Pauly prior to their marriage? Answer this question 'yes or no.

"Answer: Yes.

"3. Were the conveyances of May 8, 1903, from Amalie Pauly to Geo. F. Littler, and, May 9, 1903, from Geo. F. Littler to Amalie Pauly made with the purpose and intent on the part of Geo. F. Littler and Amalie Pauly of fraudulently defeating the rights of defendants Irma Pauly, Henry C. Pauly and Edmund Pauly in and to the property in controversy, under the will of Henry Pauly, deceased? Answer this question yes or no.

"Answer: Yes.

"4. What was the reasonable rental value of the downstairs and basement of the building, warehouse, stable and yard, of the property in controversy from May 10, 1903, to May 10, 1906?

"Answer: $70 per month.

"5. What was the reasonable rental value of the upstairs of the store building situated on the property in controversy, from May 10, 1903, to May 10, 1906?

"Answer: $45 per month.

"6. At the time of the marriage of Mrs. Amalie Pauly to Geo. F. Littler, did Mrs. Pauly have the property in this controversy 'on hand and undisposed of?' Answer this question yes or no.

"Answer: Yes.

Upon the answers the court adjudged one-half the property to John C. Dielmann, one-fourth to Amalie Littler and one-twelfth each to Henry C., Edmund B. and Irma A. Pauly, subjecting the interest of Amalie Littler and Henry C. Pauly to the deed of trust of D. & A. Oppenheimer, finding the property incapable of partition and ordering a sale by Geo. B. Taliaferro, who was appointed receiver. Appeals from the judgment have been perfected by Amalie Littler and D. & A. Oppenheimer.

Henry Pauly died on January 28, 1902, leaving surviving him his wife Amalie, and three children, Henry C., Edmund B. and Irma A. Pauly. In his will, which was duly probated, were the following provisions: "I do hereby give, will and bequeath unto my beloved wife, Amalie Pauly, all the estate that I shall leave or die possessed of, including real, personal and mixed property, leaving the same to her absolutely and in fee simple; provided, however, that if my said wife should remarry, then immediately upon her remarriage all such part of my estate as may not have been consumed by my wife, or remain in her hands, shall pass to and vest in all of my children, share and share alike, absolutely and in fee simple. This provision shall in no manner prevent my wife from selling, and disposing of, or using my estate as she sees fit, so long as she remains unmarried."

Amalie Pauly was appointed independent executrix of the will and duly qualified in that capacity, and on May 8, 1903, she executed, acknowledged and delivered to Geo. F. Littler a deed of conveyance to said premises, whereby she conveyed, for the consideration of one dollar paid by him, a number of lots or parcels of land, among

the number being the property in controversy. On the following day, May 9, 1903, the same property, for a consideration of one dollar, was conveyed by George F. Littler to Amalie Pauly, by a deed which was duly acknowledged, delivered and recorded. Amalie Littler admitted that her conveyance of the property to Littler was made with the agreement that he should reconvey to her, and that the conveyances were made for the purpose of preventing that part of the will in connection with her remarriage from "taking effect so far as the children were concerned." She was asked if the conveyances were not made "to prevent them from taking under the will," and answered, "Yes, sir." George F. Littler swore that he and Amalie Pauly intended to marry; that they read the will, and before they married went to a lawyer to consult as to the proper procedure for them to take to vest the title of the property in Amalie Pauly and that, under advice of the lawyer, the two deeds were executed. That the deeds were executed for the purpose of preventing the children from getting the property, and that was the sole purpose of the transaction. They married the next day after the execution of the deed by Littler to Amalie Pauly.

We do not question the correctness of the proposition that the will of Henry Pauly placed the title to all his property in his wife, Amalie Pauly, and that she had the absolute power and authority to sell, dispose of or use it as she saw fit so long as she remained a widow, but it is equally clear that by the terms of the will all such part of the estate "as may not have been consumed" by the wife or that remained in her hands when she married George F. Littler passed to and vested in the children of Henry Pauly. The evident intention of the testator was to place all his property in the hands of his wife for her maintenance, use and support, coupled with the power of alienation or disposition of it as she might deem fit. He was providing for her comfort and support alone just so long as she remained a widow, but he desired to preserve the benefits arising from his property to his wife alone, and did not desire to have the property used for the maintenance and support of another husband. The object and purpose of the widow and the man she was preparing to marry, was to defeat the will and intention of the testator and the plan of passing deeds between themselves was chosen for the purpose of defeating the will and preventing the children of the dead husband from coming into their own, and the prime issue in this case is, as to whether the courts of Texas will place their approval upon the scheme concocted for that purpose. The District Court has answered that question in the negative.

The demand for a reversal of the judgment of the District Court must be based on the proposition that the deed of Amalie Pauly to Littler was a sale, disposition or use contemplated by the will of Henry Pauly, and that in spite of the evidence that its execution and manual delivery to Littler was not intended by the parties to pass the title, but was a device and subterfuge to defeat the terms of the will, that it did pass the title to all the property that had belonged to Henry Pauly and divested the children of all interest therein. That is to say, that the mere manual delivery of a deed

and the payment and acceptance of one dollar for property worth thousands of dollars, passed title to the property, no matter what the intention of the parties may have been in executing and delivering the deed, and though the whole scheme was founded on a conspiracy to defeat the rights of the children, and thwart the intention of their father as expressed in his will.

We have seen no authorities which sustain appellants' propositions unless it be the case of Hanna v. Ladewig, 73 Texas, 37, and the case of Barnett v. De Turk, 43 Pa. St. 92, cited therein. The facts in the Texas case were, that Walter Hinkly died in 1852, leaving a will in which he bequeathed to his wife all of his property with absolute power to dispose of the same, "and sell and convey or will and bequeath the same according to her pleasure." That language was followed by a provision that the residue of the estate that might remain undisposed of by Mrs. Hinkly at her death, should be vested in her four children. In 1865 Mrs. Hinkly conveyed two tracts of land to a child of hers, not named in the will, for a recited consideration of $14,000. The title so remained until it was reconveyed to the mother by the son to whom she had conveyed it three years before. The mother made a will which bequeathed the land to certain of her children, not by Hinkly, but a former husband. The contentions of the plaintiffs, who were some of the children of Mrs. Hinkly, were that the will left only a life estate to their mother in the land with power of disposition, that upon her death the property passed to them and that the land in litigation had not been disposed of at the death of their mother, in execution of the power given in the will, and therefore was vested in the plaintiffs. The court said: "The rights of the plaintiffs depend on the fact whether Mrs. Hinkly ever executed the power conferred upon her by the will of her husband; and in disposing of that question, as it will be the most favorable position for appellants, we will assume that under the will of her husband Mrs. Hinkly only took a life estate in her husband's interest in the two tracts of land, with absolute power to dispose of them during her life by deed and at death by will."

The contention of the defendants was, that the power conferred on Mrs. Hinkly by the will was executed by her deed to her son, Z. N. Hanna, before mentioned, and the court so held, but the plaintiffs contended that the deed was made without consideration with intent to defraud the creditors of Mrs. Hinkly and offered to prove that there was no consideration for the deed. It was not claimed that the deed was made to Z. N. Hanna to defraud the children but to defeat the claims of creditors, to which class the children did not belong. The court held that Mrs. Hinkly had power to dispose of the property by will and it would seem immaterial whether the deed to Z. N. Hanna was without consideration or not, for if that deed had been null and void it merely left the property in the hands of Mrs. Hinkly with power to dispose of it by will, which she did. Under the broad terms of the will Mrs. Hinkly had the power to give the land to one of her children, and the children could not have objected. The facts of that case are

quite different from the facts in this. In that case it was not claimed that Mrs. Hinkly intended by her conveyance to defeat the intention of her testator.

In this case the conveyance was to all intents and purposes made by Mrs. Pauly to herself, Littler being used merely as a medium through whom she could obtain title to the property, thwart her dead husband's will and deprive her children of their property.

However much the cases differ, the court in the case of Hanna v. Ladewig went out of its way to impliedly endorse the case of Barnett v. Deturk, 43 Pa. St., 92, which would sustain the contention of appellants. It was unnecessary for the Supreme Court under the facts in the Hanna-Ladewig case to go the extent of a full approval of the Pennsylvania case, and we are not disposed to follow it to that extent. It would make a mockery of the wills of deceased persons, if they could be defeated and rendered nugatory by such palpably fraudulent devices as those which appear in this and the Pennsylvania case. The implied endorsement of it by the Texas Supreme Court was uncalled for by the facts and its approval was, therefore, merely *obiter dictum*.

It follows from a review of the Hanna-Ladewig case that the doctrine of *stare decisis* can not avail appellants in this case. The Supreme Court in that case, nor in any other, has held that a deliberate scheme to possess the property of an estate and defeat the will of a testator by pretended conveyances can be justified, and if it had been so held in the case mentioned it would not be *stare decisis* because not called for by the facts developed therein. Hart v. Gibbons, 14 Texas, 213. No such state of facts, as appear in the case now under consideration, have been found in any decision, unless it be in the Pennsylvania case, which can not form the basis for *stare decisis* in this State, even when commended by the Supreme Court of Texas in a case where such commendation was not necessary to a decision of the case presented.

The provision in the will as to the property that remained at the time of the marriage of Mrs. Pauly was valid, under the authorities in this State, as well as others. Laval v. Staffel, 64 Texas, 370; McMurry v. Stanley, 69 Texas, 227; Lockridge v. McCommon, 90 Texas, 234; Little v. Giles (Neb.), 41 N. W. Rep., 186; Underhill, Wills, sec. 506. And it could not be defeated by conveyances, which if upheld would nullify the provision and substitute the wish and desire of the wife in its stead. As said by the Court of Civil Appeals of the First District in the case of Gibony v. Hutcheson, 20 Texas Civ. App., 581, Mrs. Pauly was given the "power to manage, sell and dispose of the fee for her own benefit, but of course she would not have under this power the right to make a fraudulent disposition of the property for the purpose of defeating the rights of the residuary legatees and devisees." That was the object of Mrs. Pauly in making the deed to Littler and obtaining his reconveyance just upon the eve of the happening of a contingency provided for in the will, which would invest in the children the title to all of the property of the testator that had not "been consumed" or that remained in her hands. It may be that the rights

of the children, by the will of Henry Pauly, were, to use the language of the court in Hanna v. Ladewig, "dependent on the volition, pleasure and act of his wife," but they were not dependent upon the execution of fraudulent conveyances having no other purpose than the defeat of those rights. The property occupied the same position after the reconveyance by Littler that it did before it was conveyed to him, and the interest of the children attached upon the consummation of the marriage between George F. Littler and Amalie Pauly.

George F. Littler was used as a witness by appellees and clearly evinced a desire to evade answering questions propounded to him, as stated by the court in a qualification of the bill of exceptions, and was unwilling to testify to matters about which he was asked, and the court properly allowed counsel to ask him leading questions. The evidence was admissible as tending to prove fraud in the conveyance made by Amalie Pauly and the reconveyance made by Littler.

The evidence of Littler and wife upon a former trial was competent as admissions on their part. They testified to practically the same matters on this trial and the admission of the evidence could not have damaged them had it been improperly admitted.

It was not pleaded, nor proved, that the mortgage was given to D. & A. Oppenheimer to secure a debt incurred for the benefit of the separate estate of Mrs. Littler, and the judgment in favor of Henry C. Pauly, who signed the mortgage as a surety, over against Mrs. Littler can not be sustained.

The court did not err in refusing to allow Jesse D. Oppenheimer, cashier and agent for D. & A. Oppenheimer, to testify that he relied upon the decision in Hanna v. Ladewig and the advice of his attorney, in making the loan to Littler and wife. The case did not reach the facts in this case and the doctrine of *stare decisis* did not have any pertinency or application. The pleadings and evidence do not raise an issue as to D. & A. Oppenheimer being innocent lien holders, but the fact that they acted on the decision in Hanna v. Ladewig showed that the circumstances under which the deeds were executed by and between Littler and Amalie Pauly, must have been known to them.

With the judgment amended so as to leave out that portion which gave a recovery to Henry C. Pauly as against Mrs. Littler and her husband, for any amount taken out of his part of the estate in the suretyship matter, the judgment will be affirmed.

*Affirmed.*

Writ of error refused.