E. A. KELLY and George S. Westerfield, Testamentary Trustees of the Mildred Durst Giraud Trust, et al., Appellants,

v.

Robert LANSFORD, Trustee of the Pauline Moore Irrevocable Living Trust, et al., Appellees.

No. 18008.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 5, 1978.

Rehearing Denied Nov. 2, 1978.

Franklin, Kelly, Graham & Killough and W. K. Graham, Houston, for appellant.

Barlow, Gardner & Tucker and James Barlow, Fort Worth, for Robert Lansford, Trustee of the Pauline Moore Irrevocable Living Trust.

Louise Lansford, Robert Lansford, Individually, and Richard Lansford pro se.

James G. Cowen, Houston, for Estelle Markham, Tom Markham, Jr. and John Kelly Markham.

## OPINION

MASSEY, Chief Justice.

We hold that one who has by will received a life estate in property plus the power to sell, convey, dispose or expend the same, may cut off and eliminate all future estates in the same property, which may have been derived from provisions in the same will, by irrevocable conveyance to an irrevocable trust. That the settlor conveying the property might provide that he retain the usufruct during his lifetime would not affect the holding.

Mildred Durst Giraud died on May 9, 1970, leaving a holographic will which was admitted to probate in Harris County. She left specific bequests not material of consideration. Section VIII of the will is material, the provisions thereof creating the single issue in the case. Therein Mrs. Giraud left one-half the remainder of her estate to her sister Pauline Moore (Aunt Polly) "for the term of her natural life . . . (with) full and unrestricted power to sell, convey, dispose of, or expend all or any part of said property or the proceeds thereof; but at her death or at my death in the event she does not survive, any undisposed of or unexpended portion of my estate then remaining shall pass to and vest in my residuary beneficiaries under Article IX below." Article IX named the residuary beneficiaries: E. A. Kelly and George S. Westerfield as trustees for Stella Giraud, a sister-in-law, and, at the death of Stella Giraud to Mary Louise Giraud, a niece.

In 1972 the Section VIII assets were delivered to Aunt Polly. One month thereafter she executed an instrument entitled "The Pauline Moore Irrevocable Living Trust". Trustee was Robert Lansford of Fort Worth, who also signed. Simultaneously with the execution of the instrument properties described therein (the Section VIII properties in their entirety), were transferred to and accepted by Lansford to be held in such capacity as trustee for Louise Lansford, Estelle Markham, etc. (Identities of beneficiaries, qualifications upon rights, etc., have been deleted as they have no effect upon the issues resolved.)

The following paragraphs appear in the instrument:

"Sec. 1:2. *Irrevocable Trust.* This trust is hereby declared to be irrevocable, and Trustor hereby waives all right and power to alter, amend, or revoke the Trust. Trustor additionally renounces any interest, either vested or contingent, including any reversionary interest or possibility of reverter, in the income or principal of this trust.

"Sec. 2:1. *Distributions During the Life of Trustor.* During the life of the Trustor, the Trustee shall distribute all of the net income to provide for the Trustor's support, maintenance, comfort, and welfare at a reasonable standard of living."

Lansford entered upon and performed the duties of trustee in accordance with provisions of the instrument. In 1974 Aunt Polly died. She left a will by which Robert Lansford was named, and he became, independent executor of her estate.

While Aunt Polly lived, periodic payments were made direct to her of accumulated net income from the corpus of the trust estate. There was undistributed net income at date of Aunt Polly's death; it was paid to her estate. Thereafter the profits were treated as income to the trust estate.

In this situation suit was brought on May 12, 1977 by residuary beneficiaries E. A. Kelly and George S. Westerfield as Testamentary Trustees of the Mildred Durst Giraud Trust, Stella Giraud, and Mary Louise Giraud. All proper defendants were named. Prayer for relief was that the court construe the will of Mildred Durst Giraud; that the transfer of the property (received by Section VIII of the will) made by Aunt Polly to Robert Lansford, Trustee, be declared ineffective; and that judgment be rendered that they have all that property received by Aunt Polly under the aforementioned Section VIII which had been delivered to defendants; plus, in the event of the entitlement, an accounting for income derived therefrom (since Aunt Polly's death) and a judgment therefor.

Trial was before the court without a jury, following which was entered a take nothing judgment, including an adjudication that there was authorization by the Mildred Durst Giraud will for Aunt Polly to have made the disposition she had made in trust of the property received by the provisions of its Section VIII; that it was an effective disposition of property in which she retained the right during her lifetime to receive the income. Included, as an adjudication, was confirmation of transfer of title as applied to included real estate, with legal description sufficient to eliminate any question relative thereto.

From this judgment there was appeal by those who had brought suit as plaintiffs.

We affirm the judgment.

It is the position of appellants that there has been an improper and ineffective attempt by Aunt Polly, beneficiary of a mere life estate in property received by the will of another, to thwart the comprehensive estate plan of her benefactor as reflected by the whole will by device of deeding it away in trust in the instrument entitled "The Pauline Moore Irrevocable Living Trust"; that, in effect, there was no intention to convey and no disposition or any intention to make disposition on the part of Aunt Polly.

Copying from appellants' brief: By giving this property to her sister for her lifetime with the "full and unrestricted power to sell, convey, dispose of or expend", Mildred Durst Giraud intended to give to her sister the full benefit of the property. By including in the powers granted to her sister that to "dispose of" she meant that word in its common ordinary sense of to "get rid of; to put out of the way; to finish with; to transfer to the control of someone else as by selling; part with; relinquish; bargain away". *Merriam Webster's New International Dictionary*. Pauline Moore did none of these things. She did not "get rid of" the property; instead she retained the full economic benefits. She did not "put it out of the way"; she merely transferred the management to the trustee while retaining all of the economic benefits. She did not "finish with" it since she retained the right to all of the income. She did not "transfer to the control of someone else as by selling" since she did not even purport to sell. She did not "alienate" because she transferred the bare legal title to a legal fiction of her own creation or rather of the creation of the beneficiaries of the legal fiction, while retaining for herself all of its benefits. She did not "part with" because she retained all of the economic benefits. She did not "relinquish" because she retained all of the income. She did not "bargain away" because there was no "bargain" and no "away"; she retained the full right to the real "use" of the property. The whole concept and the sole utility of private ownership of property is to enjoy its use and benefit and the economic advantages and income it produces; Pauline Moore retained all of those rights and all of those benefits.

We reject the argument and contentions of appellants. On oral presentation their attorney conceded that Aunt Polly could have effectively "given away" the whole of the property received by Section VIII of the will, and that had she done so appellants' rights would have been extinguished. Necessarily included would be a concession that she could have given away any part of it, that had she done so the portions given would have likewise been alienated.

One view of the case which would require affirmance is that by means of the trust Aunt Polly had given all of the property save and except for the usufruct, a servitude upon an estate of which there was divestiture. The usufruct, as applied to property, means the profits or earnings of an estate of another; the right of enjoying anything in which one has no property, of enjoying a thing the property of which is vested in another, and to draw from the same all the profit, utility, and advantage which it may produce, provided it be without altering the substance of the thing, or of using and enjoying, and receiving the profits of, property which belongs to another, etc. 91 C.J.S. Usufruct, p. 550. The usufructory right, if a donor desires to retain it, is obviously more conveniently protected where property desired to be given to another is conveyed in trust; especially would this be true where there is more than one donee.

An opinion upon which appellants strongly rely (not a trust case) is *Littler v. Dielmann,* 48 Tex.Civ.App. 392, 106 S.W. 1137 (1908, error refused), by Judge Fly of the San Antonio Court of Civil Appeals. (To be noticed is that in 1908 the notation "error refused" meant merely that the Supreme Court approved the result but not necessarily the opinion of the Court of Civil Appeals.) In the *Littler* case there was a trial wherein the jury had found the defendant (a woman who by the will of a former husband had received a life estate in property, including the right to sell, dispose or use the same so long as she remained a widow) had not in fact divested herself of title to such property by her pretended fictitious sale to a prospective husband (who had deeded the same property back to her), and that the exchange of deeds was fraudulent and made to defeat the intent of the former testator who had been her husband. Judgment was rendered on the verdict in favor of those whose future interests in the property became vested upon the remarriage of the woman who until that time had held the rights of one possessing a life estate. The case is not in point and in no way supports the contention of appellants because the issues of fraud or fiction involved in the transfer of the Section VIII property were not raised by the evidence. Had they been raised we would have the duty to treat them as resolved by the fact finder against the appellants. In this case there were no findings of fact or conclusions of law requested or filed.

What appellants had by the Mildred Durst Giraud will, was title by way of a "future interest" in the Section VIII property, to become "vested" upon the occurrence of a condition precedent. The "condition precedent" upon which investiture of title was made to depend did not occur. When a succeeding interest is provided to be subject to a condition precedent, as at the termination of a preceding interest, it may fail to become vested. A succeeding interest, unless ended in accordance with the terms of its creation, continues as a future interest until the condition precedent is either fulfilled or become impossible of fulfillment; and in the event the condition precedent becomes impossible of fulfillment the succeeding interest ends. As applied to "remainders" within this rule: when the succeeding interest is a remainder the fulfillment of its condition precedent must be either simultaneous with, or later than, the termination of the prior interest; if earlier terminated the condition precedent cannot be fulfilled so that what was formerly a "future interest" ceases so to be for any pre-existent contingent right to investiture thereby becomes impossible. See *Restatement of the Law, Property* (1936), § 157, "Future Interests-Definitions," "Classification of Remainders"; § 239 "Termination of an Interest," "Succeeding Interest Subject to a Condition Precedent."

Cases supportive of these legal principles, aside from cases involving disposition by trust, are cited by appellees, viz: *Edds v. Mitchell,* 143 Tex. 307, 184 S.W.2d 823, 825 (1945); *Dickerson v. Keller,* 521 S.W.2d 288, 292 (Tex.Civ.App.—Texarkana, 1975, writ ref'd n. r. e.); *McKamey v. McKamey,* 332 S.W.2d 801 (Tex.Civ.App.—San Antonio 1960, writ ref'd); *Commercial Bank, Uninc. of Mason v. Satterwhite,* 413 S.W.2d 905,

908 (Tex.1967); *Harrell v. Hickman,* 147 Tex. 396, 215 S.W.2d 876, 879 (Tex.1948); and *Randall v. Estes,* 218 S.W.2d 338, 341–2 (Tex.Civ.App.—Dallas 1949, writ ref'd n. r. e.).

49 A.L.R.2d, p. 521, Annotation: Gift or other voluntary transfer by husband as fraud on wife," contains § 16, "Trusts, generally," beginning at page 602. Thereat is a discussion of whether a transfer by a husband of property to a trustee under a trust agreement, thereby putting the property beyond the reach of his wife, constitutes a fraud on her rights. It is stated that the test of validity in the cases seemingly is the amount of control over the property retained by the settlor husband.

Thereunder is discussion of the case of *West v. Miller,* 78 F.2d 479 (1935) (C.A.7, Ill.), cert. denied 296 U.S. 633, 56 S.Ct. 156, 80 L.Ed. 450, the text of A.L.R. including the following:

"[W]here a settlor . . . conveyed his personal property to a trustee, relinquishing all control over the corpus and all right to revoke the trust, and reserving nothing to himself but the bare right to enjoy the income during his lifetime, it was held in . . . a suit in equity by the wife to set aside the trust, that the trust was valid, a completed inter vivos trust. The court rejected a contention that the trust was in effect a disposition causa mortis, stating that it was clear that where a settlor, who had no reason to assume death was pending, conveyed his personalty to a trustee, relinquishing all control over the corpus and all right to revoke the trust, and reserving nothing by the bare right of enjoyment of the income for life, such person had created a completed inter vivos trust which could not be set aside in a suit in equity by the wife."

 There is fortification of what was found in 49 A.L.R.2d in *Restatement of the Law, Trusts* (1959), § 19, "(The Capacity of the Settlor to Create a Trust)-Transfer Inter Vivos in Trust"; § 74, "Trust Property"; and § 84, "Interest Subject to be Divested". Therefrom it appears that a person has the capacity to create a trust by transferring property inter vivos in trust to the extent he has capacity to transfer the property inter vivos free of trust: that property which can be held in trust includes such interests as may be the subject of a present transfer by way of outright gift, outright devise or bequest, or sale; and that any interest which is subject to be divested, if transferable, can be held in trust. We so hold in this case.

It is not because judgment of the trial court was against them that the appellants must be held to have lost their case; by the record made on trial that court could not have ruled otherwise. Aunt Polly, whether or not her action be considered morally reprehensible, had the legal right to do what she did do when she created the trust and conveyed to the Trustee the Section VIII property; and this conveyance extinguished all the future interests theretofore held in and to such property by appellants.

Judgment is affirmed.