COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-132-CV

 

 

DONALD SWEARINGIN, BILLY                                             APPELLANTS

JACK SWEARINGIN, BEVERLY 

HOOKER, CONNIE MORRIS,
AND 

FRANKIE MAE SMITH

 

                                                   V.

 

ESTATE OF VIVIAN SWEARINGIN,                                          APPELLEES

TERRY ELLIS, INDIVIDUALLY
AND 

AS TRUSTEE OF THE TERRY
ELLIS 

2003 TRUST AND AS
CO-EXECUTOR 

OF THE VIVIAN SWEARINGIN
ESTATE, 

AND DONNA MULLEN,
INDIVIDUALLY 

AND AS TRUSTEE OF THE
DONNA 

MULLEN 2003 TRUST AND AS 

CO-EXECUTOR OF THE VIVIAN


SWEARINGIN ESTATE, BELLE
HILL, 

LLC, AND DORMAN MAX, LTD.

 

                                              ------------

 

               FROM PROBATE
COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








I. 
Introduction

 

The primary issue that we address in this summary
judgment appeal is whether the 1967 contractual will of Bill and Vivian
Swearingin limited or restricted in any manner Vivian=s right
during her lifetime to make inter vivos dispositions of estate property.  Because the contractual will conveyed the
couple=s estate
to Vivian in fee simple upon Bill=s death
and because the contractual will did not limit or restrict Vivian=s right
to make inter vivos dispositions, we hold that the trial court correctly
rendered a summary judgment for Appellees on Appellants= breach
of contract, constructive trust, action to set aside transfers, tortious
interference with inheritance rights, conversion and misappropriation of
property claims, as well as on Appellants= request
for an accounting and a temporary injunction. 
Accordingly, we will affirm the trial court=s
summary judgment for Appellees on these claims.

But because Appellants= fraud
and conspiracy to defraud claims are not predicated on Vivian=s
alleged inability under the 1967 contractual will to make inter vivos transfers
of estate property and because these claims are not barred by the doctrine of
res judicata, we will reverse the trial court=s
summary judgment on these claims and remand Appellants= fraud
and conspiracy to defraud claims to the trial court.

 








II.  Factual and Procedural Background

Although the facts are undisputed, this case
presents a quirky and twisted procedural background.  Bill and Vivian Swearingin executed a joint
contractual will on August 29, 1967.  The
joint will provided that the survivor would take all the property owned by
either or both in fee simple and that any property remaining at the death of
the survivor would be divided one-half to Vivian=s named
descendants and one-half to Bill=s
children.  Bill died later in 1967, and
Vivian probated the joint will. 

Approximately thirty-five years later, Vivian
created an estate plan.  On November 9,
2002, Vivian executed a Statutory Durable Power of Attorney in favor of her
nephew, Terry Ellis, giving him immediate power to act as her agent.  On March 7, 2003, Vivian created two trusts
and named Ellis and her niece, Donna Mullen, as trustees.  Vivian also executed a Special Warranty Deed,
conveying real property to Ellis and Mullen in their capacities as
trustees.  Vivian executed a new will on
March 20, 2003.  








Bill=s
descendantsCAppellants Donald Swearingin,
Billy Jack Swearingin, Beverly Hooker, Connie Morris, and Frankie Mae SmithClearned
of Vivian=s inter vivos transfers and
filed suit against Vivian, Mullen, Ellis, and Loraine Ellis in the county court
at law in Parker County, complaining of the transfers.  Appellants asserted numerous causes of
action, including a declaratory judgment action[2]
and a claim for fraud and conspiracy to defraud, alleging that Vivian was
mentally incapacitated when she executed these documents and that Ellis and
Mullen had induced Vivian into making these inter vivos transfers to defraud
Appellants of the portion of the estate that they would inherit under the 1967
contractual will.  But Vivian was still
alive when Appellants filed their lawsuit in Parker County, so the trial court
sustained Appellees= plea to the jurisdiction, which
alleged that except for the declaratory judgment action, Appellants= claims
were not ripe.  The Parker County court
entered a January 22, 2004 order dismissing all of Appellants= claims
without prejudice except the declaratory judgment action.








Six months later, pursuant to an agreement by the
parties, the Parker County court signed a final judgment declaring that Bill
and Vivian=s 1967 joint will Aconstitutes
a contract between Bill Swearingin and Vivian Swearingin@ and
stating that Aall relief not expressly granted
herein is hereby denied.@ 
Appellants filed in this court a notice of appeal from the January 22,
2004 order of partial dismissal and also filed in the trial court a petition
for deposition to perpetuate the testimony of Vivian Swearingin and Bobby Joe
Tipton.  This latter causeCstyled AIn re
Petition to Perpetuate Testimony of Vivian Swearingin and Bobby Joe Tipton@Cwas
transferred by agreed order to the 17th District Court in Tarrant County.  Vivian subsequently died, and her March 20,
2003 will was admitted to probate. 








After Vivian=s death,
Appellants moved to dismiss their appeal of the Parker County order, contending
that the issues presented in that appeal had been mooted by Vivian=s
death.  We granted Appellants= motion
and dismissed that appeal.  After Vivian=s death,
Appellants also filed a petition in intervention against Ellis and Mullen in
the suit pending in the 17th District Court of Tarrant County, seeking to set
aside the inter vivos transfers Vivian made to Ellis and Mullen in their
capacities as trustees based on fraud, conspiracy to defraud, conversion,
misappropriation of property, and tortious interference with inheritance
rights.  Appellants also asked the court
to set aside the transfers,  to impose a
constructive trust, to enter a temporary injunction, to assess punitive damages
and attorney=s fees, and to require Appellees
to produce an accounting.[3]  The parties agreed to transfer this suit from
the 17th District Court of Tarrant County to the probate court in Tarrant
County in which the probate of Vivian=s March
20, 2003 will was pending. 








In the probate court, Appellees filed a motion
for partial summary judgment on the grounds that Appellants= claims
seeking to invalidate the November 9, 2002 Statutory Durable Power of Attorney,
the March 7, 2003 Special Warranty Deed, and all transfers made pursuant to
these instruments were barred because they were all predicated on the invalid
theory that Vivian lacked authority under the 1967 contractual will to make
these transfers and based on the doctrine of res judicata.[4]  Appellees claimed that Appellants could have,
but did not, pursue these claims to final adjudication in the Parker County
suit.  After Appellees filed their motion
for summary judgment, Appellants likewise moved for partial summary
judgment.  Appellants asked the trial
court to impose a constructive trust on all assets transferred from Vivian to
Appellees.  Appellees responded by filing
a cross-motion seeking summary judgment on Appellants= causes
of action for breach of contract and constructive trust, specifically arguing
that the 1967 contractual will did not limit Vivian=s
ability or authority to make inter vivos transfers. 

After a hearing, the probate court signed two
summary judgments:  a partial summary
judgment granting judgment for Appellees on Appellants= breach
of contract and constructive trust claims, and a final summary judgment ruling
that Appellants were barred from seeking to invalidate the Statutory Durable
Power of Attorney, the Special Warranty Deed, and the transfers made pursuant
to these documents and that all other relief was denied.  This appeal followed.

III.  Summary Judgment For Appellees

Appellants
contend in two issues that the trial court erred (1) by granting summary
judgment on their claims to enforce the 1967 contractual will and by failing to
impose a constructive trust on assets held by Appellees and (2) by rendering a
final summary judgment that their claims seeking to invalidate the Statutory
Durable Power of Attorney, the Special Warranty Deed, and the transfers made
pursuant to those instruments were barred by res judicata.  A.     Standard
of Review








A movant who conclusively negates at least one essential
element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  Id.  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.  Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.  Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).  When both parties move for summary judgment
and the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.

B.     Law on Contractual Wills








Contractual wills represent not only a proposed
testamentary disposition of property inherent in a will but also a contract
between the testators.  Magids v. Am.
Title Ins. Co., 473 S.W.2d 460, 464 (Tex. 1971) (discussing this duality); Weidner
v. Crowther, 157 Tex. 240, 301 S.W.2d 621, 624 (1957) (stating that a
contract of the parties lies at the heart of a mutual will).  Pursuant to that portion of the will that
manifests the contract, the testators agree to a particular disposition of
property once both die.  Meyer v.
Shelley, 34 S.W.3d 619, 622 (Tex. App.CAmarillo
2000, no pet.).  Upon the death of one of
the two, the bargain or agreement becomes irrevocable.  Id. 
That is, the survivor cannot alter the agreement by making a
testamentary disposition of the property subject to the agreement in a manner
different from the agreement.  Id.;
Knesek v. Witte, 715 S.W.2d 192, 198 (Tex. App.CHouston
[1st Dist.] 1986, writ ref=d
n.r.e.).

C.     Analysis
of Claims Predicated on Vivian=s Alleged Lack

of
Authority to Make Inter Vivos Transfers of Estate Property

 








Appellants argue that Vivian disposed of estate
property in violation of the contractual will by making transfers prior
to her death, which reduced the estate that was available to Appellants as the
remaindermen.[5]  Appellants do not argue on appeal that the
trial court erred by admitting Vivian=s 2003
will to probate or that the 2003 will gave Appellants a different percentage of
the residuary than the 1967 will. 
Appellants= argumentCthat
Vivian breached the contractual part of her 1967 mutual will by transferring
all of her assets to AppelleesCis not
supported by case law and contradicts the plain meaning of the terms of the
1967 contractual will. 

We begin by examining the pertinent terms of the
1967 contractual will.  Bill and Vivian
Swearingin=s contractual will provided in
paragraph 2 that

after the death of the
one of us dying first the survivor always maintain ownership of and use and
occupancy of one tract of land improved with a residence for his or her home
until his or her death, and that the survivor of us,  Bill Swearingin or Vivian Swearingin, as the
case may be, shall have absolutely and in fee simple all of the estate
of every character and description, real, personal or mixed, which either or
both of us may own or have any interest in at the time of the death of the one
of us dying first, hereby intending to include both community and separate
property, and we hereby devise and bequeath unto such survivor all of such
property, subject, however, to the terms and provisions of Paragraph 4 of this
our joint and mutual last will and testament, concerning disposition of what
property should remain on hand after the death of the one of us dying last, and
nothing in this Paragraph 2 or in Paragraph 4 shall constitute any restraint
or restriction on the full fee ownership of the survivor of us of any property,
or on the right of such survivor to manage, control, mortgage, sell, lease[,]
or use the proceeds of such property as he or she sees fit, or if he or she
needs such property or the proceeds of such property to live on or to pay any
indebtedness on the home of his or her choice. 
[Emphasis added.]

 

Paragraph 4 of the will provided that








after the death of the
one of us dying last, . . . it is our will and desire, and the will and desire
of each of us, that all of the property either or both of us may own or have an
interest in at the time of our deaths, or at the time of the death of the one
of us dying last, hereby intending to include both community and separate
property, whether it be the one place of our or his or her home or whatever
else may then be on hand in the way of property, be sold by our Independent
Executors or Independent Executrices hereinafter named . . . and divided into
two equal halves, one[-]half to go to Loraine Ellis, sister of Vivian
Swearingin, . . . and if Loraine Ellis be not then living, to Terry Ellis and
Donna Ellis equally, . . . and the other one[-]half to go to the three children
of Bill Swearingin in three equal shares, such children being James Orland
Swearingin,[6]
Melvin Donald Swearingin[,] and Frankie Mae Swearingin Smith, and if one or
more or all of such children should then be dead, their share or portion to go
to their children who survive them, in equal shares, . . . .

 








Reading these paragraphs together, it is clear
that Bill and Vivian in language free of ambiguity clothed whichever of them
survived the other with the unqualified right to convey the estate property
during his or her lifetime and limited the rights of the remaindermen to
whatever estate remained in the survivor at the time of his or her subsequent
death.  See Harrell v. Hickman,
147 Tex. 396, 402-03, 215 S.W.2d 876, 879 (1948) (holding that survivor taking
conditional fee or life estate with full power of disposition under will may
dispose of property as she sees fit during her lifetime); Singleton v.
Donalson, 117 S.W.3d 516, 519 (Tex. App.CBeaumont
2003, pet. denied) (holding that when will gives life tenant unqualified
power to dispose of property during his lifetime, the remainder beneficiaries
have no justiciable interest in any property except that which has not been
disposed of at the life tenant's death); Watson v. Watson, 576 S.W.2d
467, 469 (Tex. Civ. App.CWaco 1978, no writ) (same).  Because the contractual will did not limit
Vivian=s
powers, as the surviving spouse, to liquidate the estate=s assets
during her lifetime, she had the right to transfer any of her property,
including into trust.  See Kelly
v. Lansford, 572 S.W.2d 369, 373 (Tex. Civ. App.CFort
Worth 1978, writ ref=d n.r.e.) (stating that person
has capacity to transfer property inter vivos into trust to the extent that she
has capacity to transfer property inter vivos free of trust); Richardson v.
Lingo, 274 S.W.2d 883, 886 (Tex. Civ. App.CGalveston
1955, writ ref=d n.r.e.) (holding appellee had
right of inter vivos alienation and that his actions were completely consistent
with the will under which he received title and the contract under which the
will was made).  Vivian=s inter
vivos transfers were authorized by the 1967 will and did not change the
ultimate testamentary disposition of the estate property remaining at her
death; consequently, Vivian did not breach the 1967 contractual will.  See Meyer, 34 S.W.3d at 623; Kelly,
572 S.W.2d at 373.  In fact, Appellants=
complaint is not that they were no longer entitled to the portion of the
residuary allocated them pursuant to the 1967 will; their complaint is that the
residuary was substantially depleted by Vivian=s inter
vivos transfers.








In short, Appellees conclusively established that
the 1967 contractual will authorized Vivian to make inter vivos transfers, so
the trial court correctly granted summary judgment for Appellees on Appellants= claims
for breach of contract, constructive trust, action to set aside transfers,
tortious interference with inheritance rights, and conversion and
misappropriation of property claims, as well as on Appellants= request
for an accounting and a temporary injunction. 
All of these claims asserted by Appellants were premised on their
legally erroneous construction of the 1967 contractual will as limiting Vivian=s right
to make inter vivos transfers of estate property.  Accordingly, we overrule Appellants= first
issue.

D. 
Analysis of Fraud and Conspiracy to Defraud Claims








Appellants also asserted claims against Ellis and
Mullen for fraud and conspiracy to defraud, alleging that Vivian lacked
capacity to make the inter vivos transfers and that Ellis and Mullen induced
her into making these transfers to deprive Appellants of the remainderman
interest in the estate granted them under the 1967 contractual will.  Appellants pleaded these same fraud and conspiracy
to defraud causes of action in their suit in Parker County.  But the Parker County court dismissed these
claims without prejudice and, subsequently, entered a final declaratory
judgment in that suit.  Because
Appellants had previously brought in their Parker County suit the same fraud
and conspiracy to defraud claims they assert here, Appellees moved for a
partial summary judgment on the affirmative defense of res judicata; the trial
court granted their motion.








ATo establish res judicata, the
claimant must show:  (1) there was a
prior final judgment on the merits rendered by a court of competent
jurisdiction; (2) the parties or those in privity with them are identical in
both suits; and (3) the same cause of action is involved in both suits.@  McGowen v. Huang, 120 S.W.3d 452, 460
n.4 (Tex. App.CTexarkana 2003, pet. denied)
(citing Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex.
1996)).  Here, Appellants= fraud
and conspiracy to defraud claims were not adjudicated on the merits in the
Parker County suit.  Instead, the Parker
County court sustained Appellees= plea to
the jurisdiction and dismissed these claims without prejudice.  Unadjudicated claims dismissed without
prejudice are not subsequently barred by the doctrine of res judicata.  See Brown v. Prairie View A & M Univ.,
630 S.W.2d 405, 408 (Tex. App.CHouston
[14th Dist.] 1982, writ ref'd n.r.e.) (holding that an order dismissing a
lawsuit for want of jurisdiction is not res judicata of the merits of that
lawsuit and does not bar the plaintiff from bringing the same cause again once
the impediment to jurisdiction has been removed), abrogated on other
grounds, Harris County v. Sykes, 136 S.W.3d 635, 640 (Tex. 2004) (holding
that dismissal for want of jurisdiction based on sovereign immunity was res
judicata as to subsequent suit against governmental employee under section
101.106 of the Texas Tort Claims Act); 

see also Welch v. Hrabar, 110 S.W.3d 601, 607
(Tex. App.CHouston [14th Dist.] 2003, pet.
denied) (recognizing that if a suit is dismissed without prejudice, or
if the plaintiff takes a voluntary nonsuit, res judicata does not impede
subsequent actions); Bell v. Moores, 832 S.W.2d 749, 754 (Tex. App.CHouston
[14th Dist.] 1992, writ denied) (same); Home Builders Ass=n of
Miss., Inc. v. City of Madison, 143 F.3d 1006, 1013 (5th Cir.
1998) (stating that a dismissal for lack of subject matter jurisdiction is not
a ruling on the merits and therefore cannot have res judicata effect and bar
plaintiffs from pursuing claims in state court).








Appellees argue, however, that because the
declaratory judgment subsequently entered by the Parker County court contains a
AMother
Hubbard@ clause,
it constitutes a final judgment on the merits of Appellants= fraud
and conspiracy to defraud claims.  We
cannot agree.  These claims had been
dismissed on Appellees= motion, prior to entry of the
final declaratory judgment; they were not pending at the time the final
judgment was signed, and the final judgment did not dispose of them.  See Lehman v. Har-Con Corp., 39 S.W.3d
191, 200 (Tex. 2001) (explaining that a final judgment is one that finally
disposes of all remaining claims and indicating that a dismissed claim
is not a remaining claim).

We can affirm a summary judgment only on grounds
expressly set forth in the summary judgment motion.  Stiles v. Resolution Trust Corp., 867
S.W.2d 24, 26 (Tex. 1993) (A[A]
summary judgment cannot be affirmed on grounds not expressly set out in the
motion or response@).  Because Appellees moved for summary judgment
only on the grounds that the 1967 contractual will did not prohibit Vivian from
making inter vivos transfers and based on the doctrine of res judicata, we
cannot sustain the summary judgment on any other grounds.  See id.  We have already held that the 1967
contractual will did not prohibit Vivian from making inter vivos
transfers.  And, for the reasons set
forth above, the doctrine of res judicata does not bar Appellants= fraud
and conspiracy to defraud claims. 
Therefore, the trial court erred by granting summary judgment for
Appellees on these claims based on res judicata.  We sustain Appellants= second
issue to the extent it challenges the summary judgment on Appellants= fraud
and conspiracy to defraud claims.

IV.  Conclusion








Having overruled Appellants= first
issue, we affirm the trial court=s
summary judgment on Appellants= claims
for breach of contract, constructive trust, action to set aside transfers,
tortious interference with inheritance rights, and conversion and
misappropriation of property, as well as on Appellants= request
for an accounting and a temporary injunction. 
Having sustained Appellants= second
issue in part, we reverse the trial court=s
summary judgment on Appellants= fraud
and conspiracy to defraud claims and remand those claims to the trial court.

 

SUE
WALKER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED: June 15, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Specifically, Appellants
sought 

 

a declaration that the [1967] Bill and Vivian Swearingin Will
constitutes an irrevocable contractual Will between those parties and that
Plaintiffs have vested rights in and to all property in the name of, or being
held for the benefit of, Vivian Swearingin; that any transfers of the property
made by Vivian Swearingin, Terry Ellis[,] or Donna Mullen are void.





[3]Appellants subsequently
amended their petition to join the Estate of Vivian Swearingin; Ellis and
Mullen, individually and as co-executors; Belle Hill, LLC; and Dorman Max,
Ltd.  They also added a cause of action
for breach of contract.





[4]Appellees= summary judgment motion
explained that, A[a]s an initial matter,
Plaintiffs= claims are meritless
because the Will authorized Vivian, as the survivor, to dispose of the
inherited property >as [she saw] fit= during her lifetime.@ 





[5]Appellants are Aremaindermen@ under the will, not the
definition commonly used in real property. 
See Black=s
Law Dictionary
1293 (6th ed. 1990) (defining a Aremainderman@ under a will as Athe party who will
receive what is left of the decedent=s property after all specific bequests have been
satisfied@).





[6]James Swearingin is
deceased; his children are Connie Morris, Beverly Hooker, and Billy Jack
Swearingin.